809 A.2d 271

COMMONWEALTH of Pennsylvania, Appellee,

v.

Randy Todd HAAG.

**Appeal of Naomi Haag, as Next Friend, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 23, 2001.

Decided Oct. 24, 2002.

290

294

Andrea McKenna, Harrisburg, for Com.

Robert Brett Dunham, Philadelphia, for Naomi Haag.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Justice NEWMAN.

Naomi Haag (Appellant), as next friend of Randy Todd Haag (Haag), appeals from an Order of the Court of Common Pleas of Berks County (PCRA court) denying her motion to stay all Post Conviction Relief Act [1] (PCRA) proceedings and requiring her to proceed on the PCRA petition that she had filed on behalf of Haag. Based upon the reasons set forth below, we affirm.

1. 42 Pa.C.S. § 9541 *et seq.*

## I. FACTS AND PROCEDURAL HISTORY

This case involves a somewhat complicated procedural history. On February 7, 1986, a jury found Haag guilty of the first-degree murder and kidnapping of Richard Good. Following a penalty phase hearing, the jury sentenced Haag to death and the trial court imposed a consecutive sentence of ten to twenty years imprisonment for the kidnapping charge. Haag filed a direct appeal with this Court. During the pendency of his direct appeal, Haag's attorney at trial and on appeal, Robert L. Van Hoove, Esq. (Van Hoove), died. Subsequent to his death, Van Hoove's files regarding Haag's case were destroyed. Then, this Court affirmed Haag's conviction for murder in the first-degree and the sentence of death. *Commonwealth v. Haag*, 522 Pa. 388, 562 A.2d 289 (1989).

While Haag remained incarcerated at the State Correctional Institution at Huntington (SCI Huntingdon), the Pennsylvania Department of Corrections (DOC) sought involuntary mental health treatment for Haag pursuant to the Mental Health Procedures Act (Mental Health Act).[2] In March of 1991, William J. Love, Acting Superintendent of SCI Huntingdon, filed a petition in the Huntingdon County Court of Common Pleas requesting permission to involuntarily commit Haag in order to treat him for his mental illness. An attorney from the Huntingdon County Public Defender's Office represented Haag at the involuntary treatment hearing. By Order dated April 5, 1991, former President Judge Newton C. Taylor denied the Petition for Involuntary Treatment. The judge found evidence that Haag was mentally ill; however, he denied the petition because the DOC had failed to demonstrate that Haag was a danger to himself or others, as required for involuntary treatment orders under the Mental Health Act.[3]

2. Act of July 9, 1976, P.L. 817, No. 143, *as amended*, 50 P.S. § 7101 *et seq.*

3. *See* 50 P.S. §§ 7401, 7301 (stating that a prisoner may be subject to involuntary treatment if he or she poses a clear and present danger of harm to others, himself, or herself).

The DOC continued to monitor Haag's mental state. Haag's mental health records from 1991 through 1994 reflect that Dr. Frederick E. Wawrose, Consulting Psychiatrist at SCI Huntingdon, repeatedly diagnosed Haag as psychotic, paranoid schizophrenic, delusional, and suffering from Capgras' Syndrome.[4]

Then, on November 28, 1995, Norris Gelman, Esq. (PCRA counsel)[5] filed a PCRA petition on behalf of Haag alleging that Haag was incompetent to pursue collateral relief and seeking the appointment of Haag's mother, Naomi Haag (Appellant), as next friend.[6] The Commonwealth contested the appointment of Appellant as next friend and filed a response to Haag's PCRA petition.

On April 26, 1996, then-Governor Tom Ridge issued a death warrant for the execution of Haag. Thereafter, the Governor signed a reprieve staying the death warrant pending the resolution of Haag's PCRA proceedings.

On March 12, 1997, the PCRA court issued an Order that scheduled a hearing on whether or not Haag had made a conscious and rational decision not to contest the death penalty. Additionally, the court ordered Dr. Robert L. Sadoff (Dr. Sadoff) to act as its impartial psychiatric witness on this issue

4. People afflicted with Capgras' Syndrome believe that important people in their lives have been replaced by exact doubles and may even believe that they themselves are represented somewhere by a double they never see. *See* R.J. Berson, *Capgras' Syndrome*, 140 Am J. Psychiatry 969 (1983).

5. Robert Brett Dunham, Esq. acted as co-counsel in this matter beginning in December of 1998.

6. Haag's PCRA petition also asserted several grounds attacking his first-degree murder conviction and death sentence, including that trial counsel acted ineffectively by failing to: (1) object to the charge regarding accomplice testimony, (2) object to the charge regarding alibi testimony, (3) raise and seek reversal of the death penalty based upon a violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), (4) request a no adverse inference charge addressing a defendant's right not to testify during the penalty phase, and (5) object to several instances of prosecutorial misconduct. We note that these claims may be adequately litigated without the participation of Haag.

and permitted the parties to present their own expert opinions as to Haag's competence.

At the hearing on April 28, 1997, defense psychologist Dr. Richard G. Dudley, Jr. (Dr. Dudley) testified as to Haag's competency. Dr. Dudley reported that Haag was unable to assist his present counsel in post conviction litigation because he did not possess a rational understanding of his present situation and in his present state, he was not able to discuss facts relevant to the case or to answer even the most basic inquiries from counsel. On May 7, 1997, Dr. Sadoff testified that he was in agreement with Dr. Dudley's assessment of Haag's mental state. Dr. Sadoff opined that, because of Haag's psychosis, he was not competent to knowingly and intelligently waive his right to a collateral attack of his sentence and conviction.

On May 19, 1997, the PCRA court issued an Order stating that while Haag was incompetent to stand trial or to be executed, Appellant could not file a PCRA petition as next friend. The court stated that Appellant could pursue PCRA relief on behalf of Haag only as a court-appointed guardian. As part of its May 19, 1997 Order, the court dismissed the next friend petition. Upon request of the parties, on June 11, 1997, the PCRA court vacated its Order of May 19, 1997, and stayed all proceedings pending this Court's decision in *In re Heidnik*, 554 Pa. 177, 720 A.2d 1016 (1998). We issued our decision in *Heidnik* and the PCRA court granted Appellant next friend status on October 29, 1998.

On November 10, 1998, Attorney General Mike Fisher filed a Motion for a Treatment Order, asking the PCRA court to order the DOC to provide treatment to Haag for paranoid schizophrenia. Following a hearing on January 4, 1999, the PCRA court dismissed the motion because the court found that the Attorney General had presented no evidence that Haag was a danger to himself or others as is required for involuntary treatment of all individuals under the Mental Health Act.[7]

7. *See* 50 P.S. § 7401 (stating that proceedings may be instituted for the treatment of a person serving a criminal sentence that has become

On January 29, 1999, the PCRA court ordered Appellant to proceed with her reinstated petition for post conviction relief on behalf of Haag. Appellant moved the PCRA court to declare next friend remedies inadequate to protect Haag's right to challenge his conviction and death sentence and to stay all PCRA proceedings until Haag regained his competence. The court allowed defense psychiatrist Dr. Dudley to re-examine Haag to determine Haag's current mental state.

The PCRA court held a hearing on Appellant's motion on April 9, 1999. At the hearing, Dr. Dudley again offered the opinion that Haag was incompetent and that his condition remained unchanged from his last evaluation.

On February 4, 2000, the PCRA court issued an Order denying Appellant's motion to stay PCRA proceedings. The court declined to declare Haag incompetent to proceed with collateral review of his death sentence because the court found such a determination unnecessary when a next friend had been appointed and had commenced PCRA proceedings on behalf of the prisoner. Finally, the PCRA court ordered Appellant to proceed with her PCRA next friend petition.

In its Opinion in support of its Order, the PCRA court held that a court may decide a PCRA petition on its merits, despite the fact that a prisoner is not competent to assist his next friend or counsel during the proceedings. The court noted that no Pennsylvania or United States Supreme Court decision establishes a standard of competence for a PCRA proceeding. The court reasoned that the whole purpose of appointing a next friend is to secure a prisoner's PCRA rights, even when the prisoner cannot secure them for himself or herself. The court concluded that a prisoner could always proceed by next friend regardless of how incompetent he or she may be.

On February 8, 2000, the PCRA court certified that its Order in the present case involved a controlling question of law as to which there is substantial ground for a difference of

mentally disabled by using the civil provisions of the Mental Health Act and in the same manner as if the person were not serving a criminal sentence).

opinion and that an immediate appeal from its Order may materially advance the ultimate determination of the matter. Thereafter, Appellant sought permission to appeal to this Court and we granted review.

## II. DISCUSSION

### A. Competency Requirement

■ We have addressed the competency required of an individual to proceed through various stages of the criminal justice system. According to our Mental Health Act, an individual must be competent to be tried, convicted, or sentenced. 50 P.S. § 7402(a). The Mental Health Act provides that a defendant is incompetent when "found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense." *Id.* In *Commonwealth v. Jermyn*, 539 Pa. 371, 652 A.2d 821, 823 (1995), *cert. denied*, 515 U.S. 1126, 115 S.Ct. 2285, 132 L.Ed.2d 287 (1995), we recognized that the above-stated competency standard does not apply beyond sentencing. Regarding direct appeal, a defendant must possess some level of competence because he or she may waive his or her right to appeal only through knowing, voluntary, and intelligent waiver. PA. CONST. art. 5, § 9; *Commonwealth v. Passaro*, 504 Pa. 611, 476 A.2d 346, 348 (1984). We have stated that it is not proper for an appellate court to review a defendant's direct appeal if he or she is not competent enough to communicate with counsel. *Commonwealth v. Silo*, 469 Pa. 40, 364 A.2d 893, 894–95 (1976). In addition, looking to the decision of the United States Supreme Court in *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), we have recognized that the Eighth Amendment prohibits the execution of an incompetent individual. *Jermyn*, 652 A.2d at 822. The Commonwealth may not execute someone who does not "comprehend[] the reasons for the death penalty and its implications." *Id.* at 824.

■■ Whether an individual must possess some level of competency in order to pursue a collateral challenge of his or

her conviction and death sentence is a matter of first impression in Pennsylvania.[8] Neither the PCRA nor its accompanying rules of procedure discuss the competency of a prisoner to pursue relief under the Act. Beyond holding that a prisoner must be competent to waive the right to seek PCRA relief, *Commonwealth v. Bronshtein,* 556 Pa. 545, 729 A.2d 1102 (1999), neither we nor the United States Supreme Court have addressed the level of competency required to pursue post conviction relief.

■ Appellant asserts that, in order to proceed through PCRA proceedings, a prisoner must be competent. Additionally, Appellant suggests that this Court adopt, as the competency standard for collateral review, either the standard of competence to be executed or to stand trial.[9] Finally, Appellant asserts that the lower court erred when it refused to suspend PCRA proceedings until Haag regains his competence. She claims that a prisoner's lack of competency and its effect on communication with counsel may, under certain circumstances, justify a suspension of PCRA proceedings even after the appointment of a next friend.

Today, we hold that when represented by a next friend and counsel, a prisoner's incompetence is not a bar to effective collateral review in a death penalty case. We arrive at our decision based upon our line of precedent dealing with next friend standing.

A next friend is a person who appears in a lawsuit to act for the benefit of an incompetent or minor plaintiff, but who is not a party to the lawsuit and not appointed as a guardian. BLACK'S LAW DICTIONARY 1065 (7th ed.1999); *see generally Bertinelli v. Galoni,* 331 Pa. 73, 200 A. 58 (1938). The United

8. Because the instant appeal hinges upon a question of law, our standard of review is plenary. *Phillips v. A Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

9. As noted earlier in this discussion, the standard for the competency to be executed is to be able to comprehend the reasons for the death penalty and its implications. *Jermyn,* 652 A.2d at 824. The competency standard to stand trial is to be able to understand the nature or object of the proceedings and to assist in one's defense. 50 P.S. § 7402(a).

States Supreme Court first discussed next friend standing at length in *Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). *Whitmore* involved a putative next friend seeking to intervene and appeal the conviction and sentence of a fellow death row inmate in an Arkansas court. The United States Supreme Court reviewed the decision of the Arkansas Supreme Court to deny next friend standing as a matter of state common law. During its analysis, the United States Supreme Court discussed the requirements for next friend standing for purposes of the federal habeas corpus statute and noted two prerequisites:

First, a "next friend" must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest.

*Id.* at 163–64 (citations omitted). Through a series of cases, which relied upon the reasoning of *Whitmore*, we recognized that our law permits a next friend to bring a PCRA action on behalf of a prisoner. *See Commonwealth v. White*, 557 Pa. 408, 734 A.2d 374 (1999); *Bronshtein*, 729 A.2d at 1102; *Heidnik*, 720 A.2d at 1016.

In *Heidnik*, this Court focused upon how a third party may raise the issue of a prisoner's competency to be executed.[10]

---

**10.** The Commonwealth scheduled the execution of Gary Heidnik (Heidnik) for April 15, 1997. The third party in *Heidnik*, an attorney for the Center for Legal Advocacy and Defense Assistance (CLEADA), sought a stay of execution without petitioning for next friend standing before the common pleas court on April 11, 1997. That same day, the CLEADA attorney sought a stay of execution with this Court. The Court of Common Pleas denied the stay. In separate proceedings, CLEADA sought an Order from the U.S. District Court for the Eastern District of Pennsylvania staying the execution of Heidnik and designating Heidnik's daughter as next friend. On April 16, 1997, this Court granted a temporary stay of execution. Meanwhile, the federal district court denied relief to Heidnik, but continued a stay of execution pending an appeal to the Third Circuit Court of Appeals. The Third Circuit reversed the decision of the district court, held that Heidnik was

While the third party in *Heidnik*, an attorney for the Center for Legal Advocacy and Defense Assistance, had not sought next friend standing before the common pleas court, we looked to the requirements of next friend standing as set forth in *Whitmore* as the procedural framework for how a third party could bring the matter of competency to be executed before a court. *Id.* at 1019–21. We also suggested that the standards of *Whitmore* would apply if a third party sought to initiate PCRA litigation as a next friend on behalf of a prisoner. *Id.* at 1020.

Less than a year later, we again addressed next friend standing; this time within the context of a third party's ability to appeal an Order of a PCRA court dismissing the PCRA petition of a death row inmate. *Bronshtein*, 729 A.2d at 1102. Antuan Bronshtein (Bronshtein) informed the PCRA court that he wished to waive his right to seek PCRA relief. Following several hearings, the PCRA court entered an Order dismissing his PCRA petition. Bronshtein's mother and sister, as next friends, filed an appeal of the Order. After reviewing the standards for next friend standing in *Whitmore*, we held that Bronshtein's mother and sister lacked standing as next friends. *Id.* at 1106–07. We held that because Bronshtein was competent and had knowingly, intelligently, and voluntarily waived his right to pursue PCRA relief, his family members failed to meet the first requirement of next friend standing by showing that Bronshtein could not appear on his own behalf and pursue PCRA relief. *Id.*

Then, in *White*, we reviewed the challenge of Maxine Davidson White (White) to an Order of the PCRA court denying her standing as a next friend to file a PCRA petition on behalf of her father, Gary Heidnik. Relying upon *Bronshtein* and

incompetent to litigate his own cause, and appointed next friend status to Heidnik's daughter (next friend). The Commonwealth appealed to the United States Supreme Court, which issued an Order vacating the stay of execution on April 19, 1997. The next friend filed with this Court a Petition for Review of the Order of the Court of Common Pleas, which denied a stay of execution. After reviewing this Petition, we issued an Opinion clarifying the requirements for next friend standing in our courts.

*Heidnik,* we noted that Pennsylvania had adopted the two prerequisites for next friend standing as set forth in *Whitmore. White,* 734 A.2d at 376. This Court then affirmed the PCRA court's determination that White lacked standing as a next friend because she failed to demonstrate that her father was incompetent to appear on his own behalf and litigate his own cause. *Id.* at 385. In discussing the judicial inquiry into the degree of competency that satisfies the *Whitmore* standard, we stated that it "is not dependent upon the use of certain magic words to describe the prisoner's competency or lack thereof, but instead requires that the fact-finder make a conscientious effort to determine whether the prisoner is capable of making a rational decision to forego the potential avenues of appeal that are available to him." *Id.* at 382.

Based upon this line of cases, a putative next friend must demonstrate that the prisoner is incompetent, such that the prisoner is incapable of making a rational decision as to whether to pursue PCRA relief. *Id.; Bronshtein,* 729 A.2d at 1106-07. Also, a putative next friend must prove that he or she is truly dedicated to the prisoner's best interests and shares a significant relationship with the prisoner in order to obtain standing to pursue post conviction relief on behalf of the prisoner. *White,* 734 A.2d at 376; *Bronshtein,* 729 A.2d at 1106; *Heidnik,* 720 A.2d at 1020. It logically follows that a prisoner need not be competent to proceed through PCRA proceedings when a next friend has been appointed to act on his or her behalf because of such incompetence.

In the present case, it is indisputable that Haag is incompetent to waive his right to PCRA relief and that Appellant has standing as next friend to pursue such relief for him. Appellant seeks to suspend PCRA proceedings because Haag cannot aid her and PCRA counsel in an investigation of possible avenues for relief. It appears that, in any situation where a next friend initiates PCRA proceedings, the prisoner will be unwilling or unable to assist in identifying issues to raise on collateral review. A prisoner's inability to participate in next friend PCRA proceedings due to incompetence is not a

reason to halt such proceedings. Requiring a next friend to pursue relief while a prisoner is incompetent ensures that the prisoner promptly reaps the benefits from meritorious claims, rather than suffering delay in relief. *See, e.g., State v. Debra A.E.*, 188 Wis.2d 111, 523 N.W.2d 727, 735 (1994). Also, if a next friend seeks review while the prisoner is incompetent, issues will be resolved while evidence and memories are still fresh. We recognize that this case involves unusual factual circumstances such that it may be impossible to discover cognizable claims outside of the record, which otherwise would have been available under the PCRA, but were undiscoverable due to Haag's incompetence. Due to the severity of the penalty involved, we do not want such a potential class of claims to escape review; however, we do not believe that an indefinite suspension of PCRA proceedings is the best way to preserve such issues. We instruct Appellant to proceed on her petition, and if Haag regains competency, he may seek review of any such claims through a second PCRA petition.[11]

11. A possible scenario may occur in the future. Haag may regain his competence after his next friend and counsel have litigated claims through a PCRA petition. The next friend may be unsuccessful in obtaining relief; and, now that he is competent, Haag may wish to raise cognizable PCRA claims of which only he knew and, because of his incompetence, was unable to communicate to his next friend or counsel. While Appellant asserts that Haag will be time barred from bringing a second petition and raising this class of claims, we disagree. Judgment in this case became final in 1989. *See* 42 Pa.C.S. § 9545(b)(3). PCRA counsel filed Haag's first petition in November of 1995. Haag's first petition was timely filed. *See* Section 3(1) of the Act of Nov. 17, 1995 (Spec.Sess. No. 1), P.L. 1118, No. 32 (stating that a prisoner whose judgment has become final on or before the effective date of the amended PCRA (January 16, 1996) shall be deemed to have filed a timely petition if prisoner's first petition is filed within one year of the effective date of the Act); *Commonwealth v. Yarris*, 557 Pa. 12, 731 A.2d 581, 587 n. 5 (1999).

If Haag files a second petition, that petition would be subject to the requirements for timely filing as found in the current provisions of the PCRA. *See Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 641 (Pa.1998). Because Haag's second petition cannot possibly be filed within one year of the date upon which judgment became final, his second petition will be time barred unless one of three statutory exceptions applies. 42 Pa.C.S. § 9545(b); *Yarris*, 731 A.2d at 586. The time limit for filing a PCRA petition is jurisdictional, and not subject to equitable tolling. *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 222 (1999).

Our decision to decline to indefinitely suspend these proceedings based upon speculation that additional claims may exist, but are, as of now, undiscoverable, aligns with the General Assembly's interest in according finality to PCRA proceedings. *Peterkin,* 722 A.2d at 643–44; *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 700 (1998). There is no provision in the PCRA for a perpetual stay or suspension of proceedings. Also, our decision is in accord with other jurisdictions that have considered the issue of competency to pursue post conviction review. *See Debra A.E.,* 523 N.W.2d at 734; *Dugar v. Whitley,* 615 So.2d 1334, 1335 (La.1993); *Ex parte Mines,* 26 S.W.3d 910, 911 (Tex.Crim.App.2000), *cert. denied,* 532 U.S. 908, 121 S.Ct. 1234, 149 L.Ed.2d 143 (2001); *Fisher v. State,* 845 P.2d 1272, 1277 (Okla.Crim.App.1992), *cert. denied,* 509 U.S. 911, 113 S.Ct. 3014, 125 L.Ed.2d 704 (1993). Other state courts have taken a position contrary to ours and have concluded that a prisoner must be competent to pursue post conviction relief. *See Carter v. State,* 706 So.2d 873, 875 (Fla.1997) (per curiam); *People v. Owens,* 139 Ill.2d 351, 151 Ill.Dec. 522, 564 N.E.2d 1184, 1188 (1990). While these courts facially advocate a stance different from our present holding, the ultimate outcomes in these cases are the

Although we have not addressed the issue, arguably, the exception found in 42 Pa.C.S. § 9545(b)(1)(ii) seems to apply to the present facts. 42 Pa.C.S. § 9545(b)(1)(ii) (providing for an exception to the time requirement for filing a petition when "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence"). Typically, section 9545(b)(1)(ii) has been used to excuse the untimeliness of a petition based upon after-discovered evidence. *Commonwealth v. Gamboa–Taylor,* 562 Pa. 70, 753 A.2d 780, 783 (2000). In this case, however, Haag's inability to communicate with counsel because of mental illness, the death of prior counsel, and the destruction of Haag's file could satisfy the exception in section 9545(b)(1)(ii) for claims based upon facts not discovered by PCRA counsel through the exercise of due diligence. If Haag filed his second petition within 60 days of regaining his competence, and thereby, his ability to "know" such facts, Haag's second petition would not be time barred. *See* 42 Pa.C.S. § 9545(b)(2).

As this issue is not ripe, and may never be, we must leave it for another day. Under our understanding of the current PCRA, which the General Assembly may change before we ever have the opportunity to address this matter, Haag would have the opportunity to seek review of claims otherwise available under the PCRA, but unraisable in his first petition due to his incompetence.

same as the instant case. The courts holding that a prisoner must be competent to pursue post conviction relief also conclude that a third party must promptly seek all legal and record based claims on behalf of the incompetent prisoner, and the prisoner may raise any factually-based claims once he or she has regained competency. *See Carter*, 706 So.2d at 876 (holding "[i]f a post conviction defendant is found incompetent, claims raising purely legal issues that are of record and claims that do not otherwise require the defendant's input must proceed"); *Owens*, 151 Ill.Dec. 522, 564 N.E.2d at 1190 (holding that issues that are of record and not dependent upon personal information from the prisoner could be litigated by competent counsel). We now address whether our holding today infringes upon the constitutional rights of Haag.

## B. Constitutional Considerations

Appellant claims that the Order of the PCRA court, which directs her to proceed in her pursuit of PCRA relief, violates the constitutional ban on cruel and unusual punishment, Haag's right to effective assistance of counsel, and Haag's right to due process. As discussed *infra*, the Order of the PCRA court does not violate Haag's constitutional rights and therefore we affirm.

### 1. Right to be free from cruel and unusual punishment

██ Relying upon the decision of the United States Supreme Court in *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), Appellant asserts that the Eighth Amendment[12] provides grounds to suspend adversarial proceedings in a capital post conviction case during the period in which the prisoner's mental illness prevents him or her from comprehending the reasons for his or her sentence or its implications. She claims that forcing an incompetent prisoner to proceed through PCRA proceedings and toward his or her death is tantamount to cruel and unusual punishment.

12. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

The ban on cruel and unusual punishment set forth by the Eighth Amendment prohibits a state from carrying out the sentence of death upon a prisoner who is insane. *Ford,* 477 U.S. at 409–10, 106 S.Ct. 2595; *Jermyn,* 652 A.2d at 822. The limit on a state's power to execute the insane is rooted in the questionable retributive value of executing a person who has no comprehension of why he or she has been stripped of the right to life and the natural abhorrence society feels at killing one who has no capacity to understand his or her own conscience or deity. *Ford,* 477 U.S. at 409–10, 106 S.Ct. 2595.

*Ford* addresses only the imposition of the death penalty and does not examine any limitation on a state's power to require a next friend to proceed with the post conviction proceedings that he or she has initiated. In the present case, the Commonwealth is not inflicting cruel and unusual punishment upon Haag. The Commonwealth has yet to punish Haag by carrying out his death sentence. We conclude that the Eighth Amendment ban on executing the insane does not prohibit an incompetent individual from using a system of collateral review to challenge an allegedly fundamentally unfair conviction before the imposition of sentence. Consequently, Haag is not entitled to relief under the Eighth Amendment.

### 2. Right to effective assistance of PCRA counsel

Appellant argues that due to his mental illness, Haag cannot effectively communicate and work with PCRA counsel during the collateral review process. Consequently, Appellant claims that PCRA counsel cannot investigate claims outside of the record due to Haag's incompetence, the death of previous counsel, and destruction of Haag's file. Therefore, Appellant asserts that forcing PCRA counsel to proceed, despite his inability to investigate all possible claims for PCRA relief, denies Haag effective assistance of counsel.

While a PCRA petitioner does not have a Sixth Amendment right to assistance of counsel during collateral review, this Commonwealth, by way of procedural rule, pro-

vides for the appointment of counsel during a prisoner's first petition for post conviction relief. Pa.R.Crim.P. 904; *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Commonwealth v. Kenney*, 557 Pa. 195, 732 A.2d 1161, 1165 (1999). Pursuant to our procedural rules, not only does a PCRA petitioner have the "right" to counsel, but also he or she has the "right" to effective assistance of counsel. *Commonwealth v. Albrecht*, 720 A.2d at 699–700. The guidance and representation of an attorney during collateral review "should assure that meritorious legal issues are recognized and addressed, and that meritless claims are foregone." *Commonwealth v. Albert*, 522 Pa. 331, 561 A.2d 736, 738–39 (1989).

Requiring counsel to pursue PCRA relief on Haag's behalf with the assistance of a next friend is sufficient to protect any "right" to counsel. There is no indication that PCRA counsel will not raise all meritorious claims capable of investigation. The mere possibility that an undiscoverable basis for relief exists does not render counsel ineffective. Consequently, we hold that the order of the PCRA court does not violate Haag's right to effective assistance of counsel.

### 3. Right to due process of law

■ Lastly, Appellant claims that Haag has a due process right [13] to suspend PCRA proceedings while extreme mental

---

13. Appellant asserts that forcing her to proceed with the PCRA petition would violate Haag's due process rights under both the Fourteenth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution.

The Fourteenth Amendment provides in part, "nor shall any State deprive any person of life, liberty, or property, without due process of Law ..." U.S. CONST. amend. XIV, § 1. Article 1, Section 9 states in part, "In all criminal prosecutions the accused ... [cannot] be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land." PA. CONST. art. 1, § 9. This Court has interpreted Article 1, Section 9 as the functional equivalent of the Due Process Clause of the federal constitution. *Commonwealth v. Kratsas*, 564 Pa. 36, 764 A.2d 20, 27 n. 5 (2001); *Commonwealth v. Snyder*, 552 Pa. 44, 713 A.2d 596, 600 (1998). Appellant does not argue that Article 1, Section 9 provides Haag with greater due process protection than its federal counterpart and, therefore, we treat the two provisions as coextensive in this Opinion.

incompetence prevents him from meaningfully defending his life. Referring to *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), Appellant argues that Pennsylvania has created a due process interest in meaningful post conviction review and that such review is not possible while Haag remains incompetent.

 States have no constitutional obligation to provide a means for collaterally attacking convictions; however, if they do, then such procedures must comport with the fundamental fairness mandated by the Due Process Clause. *Finley,* 481 U.S. at 557, 107 S.Ct. 1990 (holding that due process does not require that PCRA counsel's actions comport with the procedures set forth in *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)); *see also Evitts,* 469 U.S. at 401, 105 S.Ct. 830 (stating with respect to direct appeal that, "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and in particular, in accord with the Due Process Clause"). States have "substantial discretion to develop and implement programs to aid prisoners seeking to secure postconviction review." *Finley,* 481 U.S. at 559, 107 S.Ct. 1990. *See also Murray v. Giarratano,* 492 U.S. 1, 13, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (plurality) (O'Connor, J., concurring). Additionally, post conviction programs need not extend "the full panoply of procedural protections that the Constitution requires be given to defendants who are in a fundamentally different position-at trial and on first appeal as of right." *Finley,* 481 U.S. at 559, 107 S.Ct. 1990. *See also Murray,* 492 U.S. at 13, 109 S.Ct. 2765 (plurality) (O'Connor, J., concurring).

 While the criminal trial of an incompetent defendant violates due process, *Cooper v. Oklahoma,* 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); *Commonwealth v. Hughes,* 521 Pa. 423, 555 A.2d 1264, 1270 (1989), PCRA proceedings involving an incompetent prisoner do not because of the significant differences between trial and collateral review. During trial, the Commonwealth hales a defendant into

court and seeks to overcome the presumption of innocence by proving beyond a reasonable doubt that the defendant committed a crime. *See Ross v. Moffitt,* 417 U.S. 600, 610, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); *Commonwealth v. Simmons,* 541 Pa. 211, 662 A.2d 621, 627 (1995), *cert. denied,* 516 U.S. 1128, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996). A defendant has the constitutional right to a fair trial, which includes the rights to the effective assistance of counsel, confrontation of witnesses, and election to testify or remain silent. U.S. CONST. amend. V, VI; *Riggins v. Nevada,* 504 U.S. 127, 139–140, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (Kennedy, J., concurring). Because of the risk that a defendant may be convicted without being able to assist in his own defense, due process mandates that the trial process stop if a defendant is found incompetent.[14] *Drope v. Missouri,* 420 U.S. 162, 171–172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Commonwealth ex rel. Hilberry v. Maroney,* 424 Pa. 493, 227 A.2d 159, 160 (1967). A PCRA proceeding differs greatly from trial and direct review.

 The PCRA system is not part of the criminal proceeding itself, but is, in fact, civil in nature. *Finley,* 481 U.S. at 557, 107 S.Ct. 1990. The purpose of the PCRA is to provide an action for "persons convicted of crimes they did not commit and persons serving illegal sentences" to obtain relief. 42 Pa.C.S. § 9542. *See also Peterkin,* 722 A.2d at 642–43. The prisoner initiates the proceedings and bears the burden of proving, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the PCRA's specifically enumerated errors and that the error has not been waived or previously litigated. 42 Pa.C.S. § 9543; *Commonwealth v. Banks,* 540 Pa. 143, 656 A.2d 467, 469 (1995), *cert. denied,* 516 U.S. 835, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995). Additionally, a prisoner does not have an absolute right to collateral review, and may chose to either forgo PCRA pro-

14. A defendant is incompetent to stand trial if he or she lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... [and] a rational as well as factual understanding of the proceedings against him." *Dusky v. U.S.,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). *See also* 50 P.S. § 7402(a).

ceedings or waive claims for relief by failing to comport with the procedural requirements of the Act. 42 Pa.C.S. §§ 9543(a)(3), 9544; *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 726 (2000). Pennsylvania has granted by rule the right to effective assistance of counsel during the first PCRA petition; however, a prisoner is not always entitled to discovery or an evidentiary hearing, even in capital cases. 42 Pa.C.S. § 9545(d); Pa.R.Crim.P. 904, 902(E), 907–909.

We hold that permitting an incompetent prisoner, who is represented by a next friend and counsel, to pursue PCRA relief comports with the fundamental fairness of the Due Process Clause. Historically, there have been hundreds of reported cases where a next friend sued on behalf of individuals that had been deemed legally incompetent to sue in their own right. *See Heidnik*, 720 A.2d at 1020. A next friend in the PCRA context is no different. Unlike trial, collateral review may effectively proceed despite a prisoner's incompetence. The ability of a next friend to investigate and raise all cognizable claims on behalf of an incompetent prisoner so that the prisoner may promptly seek relief, and the ability of the petitioner to raise undiscoverable claims if he or she regains competence, sufficiently protects the limited due process rights of the prisoner. We hold that the Order of the PCRA court does not violate Haag's constitutional rights and, therefore, Appellant is not entitled to indefinitely suspend PCRA proceedings.

## III. CONCLUSION

In light of the above discussion, we affirm the Order of the PCRA court denying Appellant's motion to stay all proceedings and requiring her to proceed on the PCRA petition that she had filed on behalf of Haag.[15] We remand this matter to

15. Appellant also has the ability to seek a stay of Haag's execution due to his mental incompetence. The Eighth Amendment prohibits the execution of an insane individual. *Wainwright*, 477 U.S. at 399, 106 S.Ct. 2595. The Commonwealth may not execute an individual who fails to "comprehend[] the reasons for the death penalty and its implications." *Jermyn*, 652 A.2d at 824.

the Court of Common Pleas of Berks County for proceedings consistent with this Opinion.

Mr. Justice CASTILLE files a concurring opinion.

Mr. Chief Justice ZAPPALA files a dissenting opinion in which Mr. Justice NIGRO joins.

Justice CASTILLE, Concurring.

I join the majority opinion with the exception of its suggestion that, if and when Randy Todd Haag regains competence, he will be able to invoke the after-discovered evidence exception to the PCRA's time restriction, *see* 42 Pa.C.S. § 9545(b)(1)(ii), to raise, in a second PCRA petition, cognizable claims known only to him, which he would have been able to raise under the PCRA now, but which he was unable to communicate to his next friend and PCRA counsel because of his present incompetence. *See* Majority op. at 280–81 & n. 11.

I fully agree with the majority's determination that appellant must proceed with her next friend PCRA petition now, and that this Court should not stay the pending PCRA action. As the majority aptly notes, Randy Todd Haag may be entitled to immediate relief on one or more of the substantive claims that his mother, acting as his "next friend," has raised in the PCRA petition filed on his behalf. A prisoner should not have to await a return to competence at some indeterminate time in the future to secure review of a claim that may entitle him to immediate relief now. *See Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick,* 526 Pa. 541, 587 A.2d 1346, 1350 (1991) ("Justice delayed is justice denied."); *Stottlemyer v. Stottlemyer,* 458 Pa. 503, 329 A.2d 892, 901 (1974) (Roberts, J., dissenting) (same); *see also* Pa. Const. Art. I, § 11 ("All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation **shall have remedy by due course of law, and right and justice administered without sale, denial or delay**") (emphasis added). In addition, there is a possibility that Haag may never again be deemed competent, especially since repeated efforts to involuntarily commit Haag in order to treat him for his

mental illness have been unsuccessful. A perpetual stay of the PCRA proceedings pending Haag's speculative return to competence could, thus, foreclose review of his substantive PCRA claims entirely, forever preventing him from receiving whatever relief he may be due. Even if Haag does regain competence at some point in the future, aged evidence and faded memories may make effective review of his claims, as well as a new trial or penalty hearing should one be required, more difficult.

I also agree with the majority that it is incongruous to stay the PCRA proceedings where a next friend has been appointed. The very reason that courts permit such vicarious litigation by a next friend is so that third-parties may **pursue** matters on behalf of parties who are unable to do so themselves. *See Whitmore v. Arkansas,* 495 U.S. 149, 163, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ("A 'next friend' does not himself become a party to the . . . action in which he participates, but simply **pursues the cause on behalf of the detained person,** who remains the real party in interest.") (emphasis added). The test for next friend status is designed to ensure that the party who would conduct the vicarious litigation is one who truly has the disabled litigant's best interests at heart. Where a qualified next friend (here, Haag's mother) and competent counsel stand ready to pursue the cause on an incompetent PCRA petitioner's behalf, the matter should proceed so that the petitioner may promptly have the claims reviewed and reap the benefit of any claim deemed meritorious. The indefinite suspension of Haag's PCRA proceedings would perversely effect the very result that the next friend doctrine is meant to prevent: the effective abandonment of a potentially meritorious cause of action merely because the PCRA petitioner is personally incapable of pursuing the matter at the time. Not surprisingly, while many decisions in this jurisdiction and elsewhere have recognized the propriety of a next friend stepping into the shoes of an incompetent capital defendant and vicariously litigating a cause on his behalf, appellant cites no authority holding that the true purpose of next friend standing is to immediately halt

that vicarious litigation after once establishing the power to pursue it.

As the majority also recognizes, a perpetual stay is problematic because it could effectively destroy the notion of finality in capital cases. The inability of a party to meaningfully participate in any vicariously litigated cause has a potentially adverse effect upon the cause, but that would be no reason to abandon or delay a cause especially where the alleged harm—here, wrongful conviction and punishment—is not merely a past episode but is present and ongoing by the fact of incarceration. It is difficult to imagine a non-capital prisoner, whether pursuing the matter in his own right or represented by a next friend, filing a PCRA petition and then insisting that it be placed in indeterminable stasis: the notion of vindication after many years wrongly served in prison is anathema to a system of justice. In capital cases, however, the calculus is inherently different, since "delay is often an end in itself for the death-sentenced prisoner." *Commonwealth v. Michael,* 562 Pa. 356, 755 A.2d 1274, 1284 (2000) (Castille, J., concurring); *see id.* (noting that capital prisoners, unlike other defendants, have an incentive "to utilize every means possible to delay the carrying out of their sentence"), *quoting Lindh v. Murphy,* 521 U.S. 320, 340, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (Rehnquist, C.J., dissenting). I think it is obvious that potential next friends, and capital litigation counsel, are as likely, if not more likely, to view delay as inherently beneficial in a capital case and, accordingly, I would not overdramatize the alleged difficulties in proceeding with the matter now despite Haag's present incompetence.

Finally, and perhaps most importantly, the indeterminate stay requested by appellant and approved by the dissenting opinion is not authorized by the PCRA, which is the authority under which appellant seeks relief. In addition to the fact that the PCRA does not specifically authorize perpetual stays, such a suspension would be squarely at odds with the PCRA's one-year time restriction. *See* 42 Pa.C.S. § 9545(b). That time restriction is an essential element of the PCRA, enacted in an attempt to bring some semblance of finality to criminal

cases. *See Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638, 643–44 (1998); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 700 (1999). Finality in criminal cases is an essential goal. "Finality is essential to both the retributive and the deterrent functions of criminal law" for " '[n]either innocence nor just punishment can be vindicated until the final judgment is known.' " *Calderon v. Thompson,* 523 U.S. 538, 555, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), *quoting McCleskey v. Zant,* 499 U.S. 467, 491, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In addition, it is only with "real finality" that "the victims of crime [can] move forward knowing the moral judgment [of the State] will be carried out." *Id.* at 556, 111 S.Ct. 1454.

The PCRA time restriction, moreover, is jurisdictional. *See, e.g., Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214 (1999); *Commonwealth v. Banks,* 556 Pa. 1, 726 A.2d 374 (1999). For this reason, this Court has specifically held that it is not subject to equitable tolling. *Fahy,* 737 A.2d at 222–23 ("Jurisdictional time limits go to a court's right or competency to adjudicate a controversy. These limitations are mandatory and interpreted literally; thus, a court has no authority to extend filing periods except as the statute permits."). To permit this PCRA petition to be filed by a next friend, but then to hold it in abeyance for some indeterminate time would have the very same effect as tolling the time restriction. It would subvert the language and intention of the PCRA and our governing precedent. Consistently with principles of separation of powers and *stare decisis,* I do not believe we have the power to place the petition in repose. Our job is not to innovate creative ways to defeat the limitations period. The petition having been timely filed and the next friend being qualified to pursue the matter, it should be pursued now, or discontinued.

For all of the above reasons, I join the portion of the majority opinion holding that Haag's PCRA proceedings cannot be stayed. I also join the portion of the majority opinion which holds that such a result does not violate Haag's right to be free from cruel and unusual punishment under the Eighth

Amendment of the United States Constitution, his right to effective assistance of PCRA counsel pursuant to Pa.R.Crim.P. 904, or his right to due process of law under the Fourteenth Amendment of the United States Constitution and Article 1, § 9 of the Pennsylvania Constitution. *See* Majority op. at 281–85.

I respectfully disassociate myself, however, from the majority's suggestion that, if Haag later becomes competent and there prove to be claims known only to him, which would have been cognizable under the PCRA now, but which he was unable to communicate to his next friend and counsel because of his incompetence, he will be able to raise those claims under the PCRA. Although the majority recognizes that "this issue is not ripe, and may never be," and that the Court consequently "must leave it for another day," *id.* at 12 n. 11, 737 A.2d 214, the majority nevertheless gives a strong indication that it would deem such claims cognizable under the after-discovered evidence exception to the PCRA's time restriction. *See id.* at 12, 737 A.2d 214 ("[I]f Haag regains competency, he may seek review of any such claims through a second PCRA petition."); *id.* at 12–13 n. 11, 737 A.2d 214 ("Under our understanding of the current PCRA, which the General Assembly may change before we ever have the opportunity to address the matter, Haag would have the opportunity to seek review of claims otherwise available under the PCRA, but unraisable in his first petition due to his incompetence."). Moreover, the majority cites the putative availability of PCRA review in the future as one reason to reject appellant's due process claim, thereby suggesting that it has not entirely left the matter for another day. *Id.* at 20, 737 A.2d 214.

The difficulty in addressing this futuristic scenario is that anything we might say is necessarily both speculative and ephemeral. Haag may be granted relief in this action; even if he is not, he may never be competent again or, if he is, there may in fact be no non-waived, cognizable PCRA claims for him to pursue. In short, the issue posed may never ripen into an actual case or controversy. More importantly, as the majority recognizes, the standards that govern the availability of collat-

eral attack are not immutable; thus, the PCRA landscape itself may be significantly altered by the time Haag would pursue relief via a serial petition. For example, depending upon the contours of the serial claim(s) to be raised, eligibility for relief may be affected by intervening decisional law. *See* 42 Pa.C.S. § 9545(b)(1)(iii) (setting forth exception to PCRA time bar where "the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively"). This is not at all an unusual circumstance in the capital arena. Indeed, the United States Supreme Court's recent holding in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), which held, for the first time, that execution of the mentally retarded is violative of the Eighth Amendment, no doubt has already generated litigation under this provision of the PCRA, centering around the question of retroactivity. Moreover, the standards governing both PCRA eligibility and PCRA procedural matters are subject to change by the General Assembly and by this Court through its rulemaking authority, respectively. Changes to PCRA legislation and PCRA procedural rules obviously are often directly responsive to opinions from this and other courts responding to previously unperceived or unanticipated issues. Thus, this very case may cause the General Assembly—which is better equipped than this Court to identify and balance all relevant considerations affecting the availability of collateral review under the PCRA—to squarely address the question of the incompetent PCRA petitioner who proceeds via a next friend petition. What we say today about the future, thus, may truly be "writ in water."

The point is that it is impossible to state with any degree of certainty, at this time, what will happen if and when a serial petition is filed under the PCRA. The PCRA court will be obliged to survey the legal landscape in existence at **that** time to determine the availability of review and relief.

My comments in this regard are not intended to call into question the propriety of the Court inquiring into the future

effect of its decision directing that the next friend should go forward. The question of what will happen to otherwise theoretically cognizable PCRA claims presently foreclosed as a result of Haag's incompetence is central to the procedural and constitutional theories advanced by appellant. My comments are intended only to point out just how tentative any such theory must necessarily be. Having made the disclaimer, I offer my own assessment of why it is that I believe that review of these theoretically available claims is not clearly foreclosed, even under the law as it exists today.

I tend to agree with Mr. Chief Justice Zappala's dissenting opinion that such claims would not be cognizable under the PCRA in its current form. The after-discovered evidence exception found in 42 Pa.C.S. § 9545(b)(1)(ii) covers situations "when the facts upon which the claim is predicated were unknown to the **petitioner** and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii) (emphasis added). The theoretical situation posed here, however, is not one where the facts would be **unknown** to Haag, but rather the exact opposite: the facts would be exclusively within his knowledge. That Haag, because of his mental illness, may be presently unable to communicate these facts to his counsel and next friend does not make them "unknown" under the plain language of § 9545(b)(1)(ii).

Furthermore, as Chief Justice Zappala also notes in his dissent, there is no automatic right to counsel upon a second PCRA petition. See Pa.R.Crim.P. 904(b). It is possible that a PCRA petitioner such as Haag may not have appointed counsel at the precise moment he regains competence, if he ever does.[1] Such an uncounseled defendant would be required in 60 days to identify and raise any and all claims for relief which were not available to his next friend and counsel on his first petition. 42 Pa.C.S. § 9545(b)(2). It may be difficult for any

---

1. Haag is incompetent, of course, by virtue of a court order finding him so. Presumably, he could "return" to competence only by virtue of a succeeding court order in a competency hearing. Also, presumably, counsel would be appointed for that hearing, even if counsel were not appointed for purposes of filing a serial PCRA petition.

defendant proceeding *pro se* to comply with that deadline, let alone one recently recovered from a serious mental illness. Thus, even assuming that a second PCRA petition offers a theoretical means for appellant to raise claims that could not have been raised in his first petition due to his incompetence, appellant may find himself unable to negotiate this narrow avenue of review as a practical matter.

There is another possible avenue of further review for Haag, however: Pennsylvania's habeas corpus statute. *See* 42 Pa.C.S. § 6501 *et seq.* This Court has recognized that the PCRA subsumes the remedy of habeas corpus only with respect to remedies that were actually available under the PCRA. *Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638, 639 (1998). The statutory writ of habeas corpus continues to exist, however, as a potential avenue of review for prisoners in those limited instances where the PCRA was unavailable for review of their constitutional claims. *Id. See also Commonwealth v. Chester,* 557 Pa. 358, 733 A.2d 1242 (1999). *Accord Commonwealth v. Hall,* 565 Pa. 92, 771 A.2d 1232 (2001); *Coady v. Vaughn,* 564 Pa. 604, 770 A.2d 287, 293 (2001) (Castille, J., joined by Newman, J., concurring) ("The rule that emerges from [*Commonwealth v.] Isabell, Peterkin* and *Chester* is that the state habeas corpus statute is alive and well and that the PCRA subsumes the statutory writ only to the extent that the underlying claim could have been brought under the PCRA.").

If Haag returns to competence and wishes to challenge his conviction based upon a non-waived constitutional claim which, due to his mental illness, he was previously unable to communicate to his next friend and counsel—and assuming that the version of the PCRA then in effect does not permit review of that claim—Haag may be able to pursue the claim in a petition for state habeas corpus relief. *See Commonwealth v. Isabell,* 503 Pa. 2, 467 A.2d 1287, 1291 (1983) (since challenge to action of Bureau of Corrections in computing prisoner's sentence was "not a direct or collateral attack on the conviction or sentence imposed by the trial court," it was not properly brought under predecessor to PCRA and, consequently, prisoner could "re-

sort to the writ of habeas corpus ad subjiciendum"); *see also Coady, supra* (Castille, J., joined by Newman, J., concurring) (because constitutional claim that parole was denied based upon retroactive application of new statute in violation of *ex post facto* clause of United States Constitution could not have been brought under PCRA, it was not subsumed within PCRA, and theoretically could be raised as original action in Court of Common Pleas under state habeas corpus statute). Haag could argue that his previous incompetence made such a constitutional claim unavailable to him on PCRA review and, because no previous avenue of review existed to raise the claim, statutory habeas corpus review is appropriate.

The state habeas corpus statute, which corroborates the exclusivity of the PCRA remedy in the sphere in which it operates, provides that, "Where a person is restrained by virtue of sentence after conviction for a criminal offense, the writ of habeas corpus shall not be available **if a remedy may be had by post-conviction hearing proceedings authorized by law.**" 42 Pa.C.S. § 6503(b) (emphasis added). Since the claims that would be the subject of such a state habeas corpus petition in this instance arguably were not available for collateral attack given the PCRA's time and serial petition restrictions and his then-incompetence, Haag could argue that entertaining them would not run afoul of the PCRA. Haag could argue that his was not a circumstance contemplated by the present PCRA.

In sum, while I have serious reservations as to the availability of PCRA review for constitutional claims known to Haag but presently incapable of communication due to his incompetence, as the PCRA is currently constituted, I am not convinced that review of such claims is entirely foreclosed under present Pennsylvania law. And that consideration, in turn, reinforces my resolve that the majority's holding that the next friend should go forward now is both correct and constitutionally sound.

Chief Justice ZAPPALA, Dissenting.

I respectfully dissent from the majority's holding that "a prisoner need not be competent to proceed through PCRA

proceedings when a next friend has been appointed to act on his or her behalf because of such incompetence." Majority Op. at 280. Because I would find that forcing a PCRA petitioner to proceed with his first PCRA petition when he is incompetent violates a PCRA petitioner's rights to effective assistance of PCRA counsel and due process of law, the PCRA proceedings at issue in the instant case should be stayed until such time as Randy Haag becomes competent.

While it is well established that entitlement to counsel under the Sixth Amendment of the United States Constitution does not extend to a PCRA petitioner during collateral review, *see, e.g., Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 367 (1995) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)), *cert. denied,* 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996), a PCRA petitioner is entitled to the effective assistance of counsel during a first PCRA petition; this right has been provided to a PCRA petitioner by the Commonwealth through a procedural rule. *See* Pa.R.Crim.P. 904; *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517 (2001); *Commonwealth v. Gamboa Taylor,* 562 Pa. 70, 753 A.2d 780 (2000); *Commonwealth v. Kenney,* 557 Pa. 195, 732 A.2d 1161 (1999); *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293 (1999); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998); *Commonwealth v. Priovolos,* 552 Pa. 364, 715 A.2d 420 (1998).[1]

For the right to effective assistance of counsel in a first PCRA petition not to be illusory, a PCRA petitioner must, at a minimum, be able to consult with counsel and aid counsel in identifying any potential claims cognizable under the PCRA. Since PCRA counsel's function is to identify any potential claims cognizable under the PCRA and properly present such claims to the court, it logically follows that a prisoner who is able to meaningfully consult with counsel is competent to participate in post-conviction proceedings. Conversely, a pris-

1. This Court has not addressed the issue of whether a right to effective assistance of post-conviction counsel exists under the Pennsylvania Constitution. *See Priovolos,* 715 A.2d at 422; *Travaglia,* 661 A.2d at 367; *Commonwealth v. Jermyn,* 551 Pa. 96, 709 A.2d 849, 857 n. 22 (1998); *see also,* Pa. Const. art. I, § 9.

oner who, as a result of his own incompetency, is *unable* to meaningfully consult with counsel is *not* competent to participate in post-conviction proceedings.

In this case, it is undisputed that Haag's incompetence prevents him from meaningfully consulting with PCRA counsel and thereby participating in post-conviction proceedings. Although the majority recognizes "that this case involves unusual factual circumstances such that it may be impossible to discover cognizable claims outside of the record", Majority Op. at 280, Appellant is nevertheless ordered to proceed with any legal and record-based claims through Haag's first PCRA petition as next friend because "if Haag regains competency, he may seek review of any undiscoverable claims through a second PCRA petition." *Id.*

If Haag regains his competency and seeks to file a second PCRA petition, the PCRA court will have no jurisdiction to entertain the petition unless Haag can establish: (1) that one of the three statutory exceptions provided in 42 Pa.C.S. § 9545(b)(1) applies, *see Commonwealth v. Yarris,* 557 Pa. 12, 731 A.2d 581 (1999), *Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214; and (2) that in accordance with 42 Pa.C.S. § 9545(b)(2), the petition was filed within 60 days of the date that his claims could have been presented. *See* 42 Pa.C.S. § 9545(b)(2); *Gamboa–Taylor,* 753 A.2d at 783; *Commonwealth v. Beasley,* 559 Pa. 604, 741 A.2d 1258 (1999). The majority holds that if Haag subsequently regains competency, any "undiscoverable" claims, i.e., any fact-based claims (as opposed to legal or record-based claims) which are identified through subsequent meaningful consultation with PCRA counsel, can be presented in a second PCRA petition under the "after discovered evidence" exception found in 42 Pa.C.S. § 9545(b)(1)(ii),[2] if the second PCRA petition is filed within 60

---

2. Section 9545(b) provides in pertinent part:

(b) Time for filing petition.—
(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment

days of Haag regaining his competence. *See* Majority Op. at 280–81 n. 11.[3]

I do not believe that the restricted class of claims over which the PCRA court will have jurisdiction to address in a second PCRA petition under the exception found in Section 9545(b)(1)(ii) includes all potential cognizable PCRA claims which are presently unidentifiable by the next friend or PCRA counsel due to the inability of PCRA counsel to engage in meaningful consultation with Haag regarding his case, but would be capable of identification and development should Haag regain his competence and be able to consult with PCRA counsel. The exception found at Section 9545(b)(1)(ii) is a narrow one; the class of claims which fall under the exception is extremely limited. *See Gamboa–Taylor,* 753 A.2d at 785 ("conclusion that previous counsel was ineffective is not the type of after-discovered evidence encompassed by the exception"); *see also Commonwealth v. Breakiron,* 566 Pa. 323, 781 A.2d 94 (2001); *Commonwealth v. Pursell,* 561 Pa. 214, 749 A.2d 911 (2000); *Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585 (2000).

> becomes final, unless the petition alleges and the petitioner proves that:
>
> \* \* \*
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained through the exercise of due diligence;
>
> 42 Pa.C.S. § 9545(b)(1)(ii).

3. The majority states that, "[a]s this issue is not ripe, and may never be, we must leave it for another day." Majority Op. at 281 n. 11. I fail to understand how the majority can explicitly hold that should Haag regain his competence, any fact-based claims which can be identified through subsequent meaningful consultation with PCRA counsel can be presented in a second PCRA petition under Section 9545(b)(1)(ii), and at the same time proclaim that it is not addressing the issue because it is not ripe. Although the majority claims to be leaving this issue for another day, in reality, the majority addresses the issue head on by establishing a procedure that requires Appellant to proceed on Haag's behalf with any legal and record-based claims, and postpones consideration of any fact-based claims identifiable only after Haag becomes competent for presentation in a second PCRA petition filed under Section 9545(b)(1)(ii).

In fact, under established Superior Court case law, any such claim by Haag would be time-barred. In *Commonwealth v. Hoffman*, 780 A.2d 700 (Pa.Super.2001), the Superior Court held that an appellant's claim of mental illness did not fit any exception to the timeliness requirements of the PCRA. The Superior Court reasoned:

> *Fahy* narrowly interprets the exceptions to what is contained literally in the PCRA statute. *See* [*Fahy*, 737 A.2d at 222.] The statute does not include mental illness as an exception. *See* 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Although other areas of the law may be structured to accommodate mental illness, the PCRA time restrictions are not. Our Supreme Court has interpreted the statutory filing exceptions literally, clearly stating that if an exception is not in the statute, then it does not exist. *See Fahy, supra.* Additionally, equitable principles such as equitable tolling are not applicable due to the jurisdictional nature of the PCRA time limits. *Id.* Thus, the time limits cannot be extended, except as the statute contemplates. *Id.* If we were to grant Appellant's request in this case, we would effectively create a new exception not permitted under the PCRA statute. We decline to do so.

*Id.*, 780 A.2d at 703. Apparently, under the majority opinion, the Superior Court's reasoning in *Hoffman* has been rejected *sub silentio.*

Additionally, the right to counsel in a second or subsequent PCRA petition is not co-extensive with the right to counsel in a first PCRA petition. While Pa.R.Crim.P. 904(A) provides for the appointment of counsel in a first PCRA petition when the petitioner satisfies the judge that he is unable to afford or otherwise obtain counsel, Pa.R.Crim.P. 904(B) provides for the appointment of counsel in a second or subsequent PCRA petition only in cases where the petitioner can further establish that an evidentiary hearing is required.[4] Thus, there

---

4. Rule 904 provides, in pertinent part:

 (A) Except as provided in paragraph (F), when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, the judge shall appoint counsel to repre-

exists the possibility that a PCRA petitioner such as Haag would be uncounseled at the time he regains his competence. To obtain review of any potential cognizable PCRA claims in his second PCRA petition, such an uncounseled petitioner would then have 60 days to: (1) identify on his own any potential cognizable PCRA claims which a next friend would have been unable to bring in a first PCRA petition; and (2) either carry the burden of establishing that an evidentiary hearing is required in order to qualify for the appointment of counsel or be compelled to proceed *pro se.*

The procedure suggested by the majority effectively requires the PCRA court to adjudicate that portion of the PCRA proceeding that involves legal and record-based claims that the next friend and counsel are able to identify and postpone consideration of claims that are unidentifiable without the petitioner's participation until the petitioner becomes competent. This Court's rules and the PCRA itself neither contemplate nor authorize a bifurcation of a PCRA adjudication. Such a bifurcated procedure does not insure that claims not identified in the first petition can be properly presented in a second PCRA petition and therefore violates petitioner's right to effective assistance of PCRA counsel.

Furthermore, if claims which are capable of development only after meaningful consultation with PCRA counsel ultimately fall outside the scope of claims which overcome the jurisdictional bar to their review in a second PCRA petition, the petitioner would suffer a violation of his limited due process rights. The majority recognizes that although the Commonwealth is under no constitutional obligation to provide a means for collaterally attacking convictions, because the Commonwealth has provided the PCRA as the sole vehicle to

sent the defendant on the defendant's first petition for post-conviction collateral relief.

(B) On a second or subsequent petition, when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, and an evidentiary hearing is required as provided in Rule 908, the judge shall appoint counsel to represent the defendant.

Pa.R.Crim.P. 904.

pursue collateral relief, the procedures of the PCRA must comport with the fundamental fairness mandated by the Due Process Clause.[5] *See* Majority Op. at 17–20. At a minimum, the fundamental fairness mandated by the Due Process Clause requires a procedure which ensures that all potential claims cognizable under the PCRA can be: (1) identified through a PCRA petitioner's meaningful consultation with PCRA counsel; and (2) properly asserted.

The majority holds that Haag's right to fundamental fairness under the Due Process Clause is not violated, reasoning that "[t]he ability of a next friend to investigate and raise all cognizable claims on behalf of an incompetent prisoner so that the prisoner may promptly seek relief, **and the ability of the petitioner to raise undiscoverable claims if he or she regains competence,** sufficiently protects the limited due process rights of the prisoner." Majority Op. at 285 (emphasis added). I do not believe that the procedure suggested by the majority will prevent the waiver of claims which are presently unidentifiable due to the inability of PCRA counsel to engage in meaningful consultation with Haag regarding his case, but would be capable of identification and development should Haag regain his competence and be able to consult with PCRA counsel. I cannot therefore agree with the majority's conclusion that Haag's due process rights are sufficiently protected.[6]

The Commonwealth asserts that "[n]o purpose would be served by appointment of a next friend if the litigation for which the next friend was appointed were to remain stalemated by the very condition which made appointment of a next friend appropriate." Brief for Appellee at 12–13. I disagree. Appellant as next friend has raised the issues of: (1) whether Haag is competent to waive the filing of a first PCRA petition;[7] and (2) whether forcing Haag to proceed

5. U.S. Const. amend. XIV, § 1.

6. When the issue of life and death hangs in the balance, one would assume that if we were to err, we would err on the side of caution and avoid even the slightest possibility of violating the due process rights of a capital defendant.

7. Raising the issue of whether a capital defendant is competent to waive the filing of a first PCRA petition will no longer require an

through a bifurcated PCRA proceeding violates a PCRA petitioner's rights to PCRA counsel and due process. The significance of the next friend's filing of the present PCRA petition is the preservation of Haag's PCRA rights.

Accordingly, because I conclude that forcing a PCRA petitioner to proceed with his first PCRA petition when he is incompetent violates a PCRA petitioner's rights to effective assistance of PCRA counsel and due process of law, the PCRA proceedings at issue in the instant case should be stayed until such time as Randy Haag becomes competent. I therefore respectfully dissent.

Mr. Justice NIGRO joins this dissenting opinion.

assertion of incompetence by a next friend as a result of the 2000 amendment to Pa.R.Crim.P. 904, which added paragraph (F). Rule 904 now requires that at the conclusion of direct review in a death penalty case, before the defendant will be permitted to waive post-conviction collateral review, the trial judge must conduct a colloquy on the record and find: (1) that the defendant is competent; and (2) that the waiver is knowing, intelligent and voluntary. The rule now provides, in pertinent part:

(F) Appointment of Counsel in Death Penalty Cases.

(1) At the conclusion of direct review in a death penalty case, which includes discretionary review in the Supreme Court of the United States, or at the expiration of time for seeking review, upon remand of the record, the trial judge shall appoint new counsel for the purpose of post-conviction collateral review, unless:

(a) the defendant has elected to proceed *pro se* or waive post-conviction collateral proceedings, and the judge finds, after a colloquy on the record, that the defendant is competent and the defendant's election is knowing, intelligent, and voluntary;

Pa.R.Crim.P. 904(F)(1)(a).