86 A.3d 173

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Imanuel Bassil ALI, a/k/a Emanuel Lester, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 8, 2013.

Decided Feb. 18, 2014.

310

Elizabeth Ann Larin, Esq., Federal Community Defender Office, Eastern District of PA, Shawn Nolan, Esq., Defender Association of Philadelphia, for Imanuel Bassil Ali.

Hugh J. Burns, Esq., Philadelphia, Amy Zapp, PA Office of Attorney General, for Commonwealth of Pennsylvania.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

*OPINION*

Justice STEVENS.

Imanuel Bassil Ali ("Appellant") appeals from the order dismissing his second petition for collateral relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546, as untimely filed. Represented by the Federal Community Defender's Office ("Federal Defender"), Appellant asserts he suffered from mental incompetency at relevant times during his first PCRA proceedings so as to qualify his present, second PCRA petition for the newly-discovered evidence exception to the PCRA time-bar. Because he fails to establish this claim by a preponderance of the evidence, we affirm.

Over twenty-two years ago, on November 12, 1991, a jury sentenced Appellant to death for the murder of Sheila Manigault. On Appellant's direct appeal, this Court unanimously affirmed his death sentence. *Commonwealth v. Lester*, 554 Pa. 644, 722 A.2d 997 (1998).[1] Appellant subsequently filed a timely *pro se* PCRA petition on June 25, 1999, and an amended petition on September 15, 1999.

As the procedural history pertaining to Appellant's first PCRA petition bears upon the inquiry we undertake to determine the timeliness of the present, second, petition, we reproduce from our opinion in Appellant's first PCRA appeal an excerpt describing this history:

On January 12, 2000, the PCRA court appointed Lee Mandell, Esq., as counsel for appellant, but appellant soon requested permission to proceed *pro se*. Appellant filed *pro se* supplemental PCRA petitions on June 20, 2000 and November 3, 2000. In early 2001, the PCRA court ordered a mental health evaluation, which was conducted on February 23, 2001. The evaluation resulted in a report that appellant had no mental health issues or substance abuse issues at the time, understood the "proper roles" and "major principles involved in a court of law," and was competent to assist in his own defense. Mental Health Evaluation Report

---

1. The facts underlying Appellant's convictions are set forth in detail in *Lester, supra.*

of James G. Jones, M.D., 2/26/01, at 2 (unnumbered). The PCRA court also conducted an extensive colloquy with appellant on the record before granting his request to proceed *pro se* on March 23, 2001. The Court appointed Attorney Mandell as advisory counsel. Thereafter, appellant filed an additional *pro se* supplemental PCRA petition on September 19, 2001; the Commonwealth filed a motion to dismiss on April 19, 2002; and appellant filed yet another supplemental pro se petition on May 30, 2002. The court sent appellant a notice of intention to dismiss pursuant to Pa.R.Crim.P. 907 on August 14, 2002. However, on September 13, 2002, the PCRA court found appellant incompetent to proceed *pro se*, based upon its further review of his submissions, and noted that appellant and Attorney Mandell had irreconcilable differences. The court thus allowed Attorney Mandell to withdraw and Daniel A. Rendine, Esq., was appointed as counsel for appellant on September 20, 2002. In November 2002, however, the PCRA court again permitted appellant to represent himself and directed Attorney Rendine to serve as back-up counsel. The court then held an evidentiary hearing on April 28, 2003 and, on June 27, 2003, denied PCRA relief and formally dismissed Attorney Rendine from the case.

After appellant appealed to this Court, attorneys from the Defender Association of Philadelphia, Federal Court Division, Capital *Habeas* Unit [ ], entered appearance on behalf of appellant and filed a Pa.R.A.P. 1925(b) statement on appellant's behalf on April 12, 2004. Appellant then filed his own 1925(b) statement, which was dated April 12, 2004 and docketed on April 26, 2004. On May 16, 2006, appellant filed a *pro se* Petition to Remove Counsel and Proceed *Pro Se*. On June 6, 2006, the Federal Defender filed a Response, urging denial of appellant's petition. On June 15, 2006, this Court ordered the PCRA court to conduct a hearing on appellant's request to proceed *pro se*, pursuant to *Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998). We did not relinquish jurisdiction.

At a hearing on March 30, 2007, the Commonwealth asserted that since appellant clearly had no desire to cooperate with the Federal Defender or undergo further competency evaluation by doctors, the *Grazier* hearing should proceed "with all due haste." N.T. 3/30/07, at 4. The Federal Defender responded that in its view, appellant was not competent to waive counsel and that it had a written report from a doctor [Dr. John O'Brien, M.D., a psychiatrist, see *infra*] who did not believe appellant was competent. The Federal Defender sought to have a competency proceeding held prior to the *Grazier* hearing. The PCRA court took note of the "stalemate" created when appellant's refusal to cooperate with the Federal Defender respecting his competency led the Federal Defender to conclude that appellant was incompetent. The court stated that the matter could not be delayed any further, denied the request for a pre-*Grazier* competency hearing, and scheduled the *Grazier* hearing for April 27, 2007.[2] The Federal Defender's appeal of that interlocutory ruling was quashed by this Court in an August 24, 2007 order.

The *Grazier* hearing was held on April 27, 2007. The Federal Defender attempted to raise new substantive claims in addition to the Grazier question, but the PCRA court declined to consider claims other than the one remanded to it. Following the hearing, the PCRA court issued an order on the same date finding appellant competent to waive counsel and permitting him "to proceed pro se without standby counsel being appointed in accordance with [his] request at the *Grazier* hearing." The Federal Defender appealed that order and on Jul 25, 2007, the PCRA court issued an opinion on the *Grazier* issue. The PCRA court noted that its determination that appellant's waiver of counsel was knowing and voluntary was supported by the court-ordered mental health evaluation, the *Grazier* colloquy, and appellant's behavior at the *Grazier* hearing as well as at several previous hearings.[] The Federal Defender's unau-

---

**2.** At the March 30, 2007 hearing, the court also acknowledged that psychologist Jules DeCruz of the court's mental health unit had examined Appellant in 2006 and found him competent.

thorized appeal from the grant of relief appellant himself had requested through the *Grazier* proceedings was ultimately quashed by order of this Court dated October 31, 2007.

*Commonwealth v. Ali,* 608 Pa. 71, 83–85, 10 A.3d 282, 288–291 (2010) (footnote omitted). On December 29, 2010, we affirmed the order denying PCRA relief, but noted that Appellant, acting *pro se,* had briefed his twelve appellate claims of ineffective assistance of counsel "ably enough" to permit meaningful review. *Id.* at 86, 10 A.3d at 291.

On February 25, 2011, the Federal Defender filed on Appellant's behalf the instant PCRA petition,[3] Appellant's second, reintroducing "newly-discovered" competency and *Brady*[4] claims previously ruled waived when raised initially in Appellant's first PCRA appeal after this Court remanded for a *Grazier* hearing.[5] The PCRA court determined that no claim qualified under a Section 9545(b)(1) exception and dismissed Appellant's second petition as untimely. Appellant now appeals to this Court.

 A second or subsequent petition for post-conviction relief will not be entertained unless a strong *prima facie* showing is offered to demonstrate that a miscarriage of justice may have occurred. *Commonwealth v. Allen,* 557 Pa. 135, 141, 732 A.2d 582, 586 (1999). A *prima facie* showing of entitlement to relief is made only by demonstrating either that the proceedings which resulted in conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or the defendant's innocence of the crimes for which he was charged. *Allen,* at 142, 732 A.2d at 586. Our standard of review for an order denying post-conviction

---

**3.** Appellant eventually acceded to the Federal Defender's representation after initially objecting to same and filing a *pro se* second PCRA petition.

**4.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**5.** The PCRA court properly determined it lacked jurisdiction to entertain new claims on remand during the appeal when this Court had not relinquished jurisdiction and when Appellant had not raised them in either his PCRA petition, amendments, or Pa.R.A.P. 1925(b) statement. *Ali,* at 133–34, 10 A.3d at 320.

relief is limited to whether the trial court's determination is supported by evidence of record and whether it is free of legal error. *Commonwealth v. Jermyn,* 551 Pa. 96, 709 A.2d 849, 856 (1998).

A PCRA petition, including a second or subsequent petition, must be filed within one year of the date that judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment becomes final for purposes of the PCRA "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). PCRA time limits are jurisdictional in nature, implicating a court's very power to adjudicate a controversy. *Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214 (1999). Accordingly, the "period for filing a PCRA petition is not subject to the doctrine of equitable tolling;" instead, the time for filing a PCRA petition can be extended only if the PCRA permits it to be extended, *i.e.,* by operation of one of the statutorily enumerated exceptions to the PCRA time-bar. *Id.* at 329, 737 A.2d at 222.

Here, the Federal Defender grants it filed the instant, second, PCRA petition more than one year after the date Appellant's judgment became final, but asserts the PCRA court had jurisdiction to review it because it qualified under the timeliness exceptions delineated in Section 9545(b)(1), which provides as follows:

Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Section 9545(b)(2) further provides that "[a]ny petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

The Federal Defender contends Appellant's second petition qualifies for Section 9545(b)(1)(ii)'s "newly-discovered" evidence exception to the one-year time-bar because his alleged mental incompetence throughout the time for filing and litigating his PCRA petition made him incapable of ascertaining the facts upon which the substantive claims he now raises are based. This Court has previously held that mental incompetence at relevant times may, if proven, satisfy the requirements of Section 9545(b)(1)(ii), "in which case, the claims defaulted by operation of the incompetence may be entertained." *Commonwealth v. Cruz,* 578 Pa. 325, 327, 852 A.2d 287, 288 (2004). Unable to pursue adequately collateral relief at the time he pressed his first PCRA petition *pro se,* the Federal Defender continues, Appellant cannot be fairly said to have waived his present claims such that the time-bar applies to his second petition. *See Commonwealth v. Haag,* 570 Pa. 289, 809 A.2d 271 (2002), certiorari denied 539 U.S. 918, 123 S.Ct. 2277, 156 L.Ed.2d 136 (2003) (prisoner must be competent to waive the right to seek relief under the PCRA).

For his claims, as stated, to qualify for the newly-discovered evidence exception, therefore, Appellant bears the burden of proving by a preponderance of the evidence that he was mentally incompetent during the period in which to raise and preserve claims in his first PCRA petition. We recently explained the evidentiary showing required in this regard:

In order to prove that he was incompetent, the defendant must establish that he was either unable to understand the nature of the proceedings against him or unable to participate in his own defense.

Stated otherwise, the relevant question in a competency determination is whether the defendant has sufficient ability at the pertinent time to consult with counsel with a reasonable degree of rational understanding, and to have a rational as well as a factual understanding of the proceedings.

We extend great deference to the trial judge's determination as to competency because he or she had the opportunity to observe directly a defendant's behavior. Furthermore, we note that it is a proper exercise of the trial court's discretion to accept one expert witness's opinion over that of a conflicting opinion where the record adequately supports such a resolution.

[*Commonwealth v.*] *Pruitt*, [597 Pa. 307, 322,] 951 A.2d [307,] 316 [ (2008) ] (internal citations and quotation marks omitted).

This Court has made clear that there is a distinction between whether a defendant is *unable* to cooperate with his counsel and whether a defendant *chooses not* to cooperate. *Commonwealth v. Logan*, 519 Pa. 607, 549 A.2d 531, 540 (1988). The issue in a competency determination is whether the defendant is able to cooperate with counsel, not whether he is actually cooperating. *Id.* (citation omitted).

*Commonwealth v. Flor*, 606 Pa. 384, 404–05, 998 A.2d 606, 617–18 (2010). From the record before us, we discern inadequate evidentiary support for Appellant's claim that he was mentally incompetent during first PCRA proceedings.

The Federal Defender entered its appearance in 2004 after the PCRA court dismissed Appellant's first petition and Appellant requested help with his appeal. As noted above, Appellant soon reconsidered his request and filed a petition with this Court seeking counsels' removal, all of which culminated with remand for a *Grazier* hearing and the PCRA

court's ultimate order permitting Appellant to represent himself on appeal. It was during this time, the Federal Defender maintains, that it came to question Appellant's competency.

Specifically, in its attempt to secure a competency hearing prior to the *Grazier* hearing, the Federal Defender contacted John O'Brien, M.D., a psychiatrist who had previously conducted a brief, pre-trial interview with Appellant in 1991 and reported to the court his concerns that Appellant suffered from possible psychiatric illness that could impede his ability to assist in his own defense and understand the proceedings against him.[6] After the Federal Defender supplied Dr. O'Brien with a court-ordered 1978 mental health examination resulting in a diagnosis of Personality Disorder with Paranoid Traits, school records showing low achievement, and a transcript from a 2006 civil suit deposition in which Appellant accused the Department of Corrections of handing him a black-colored food tray "too often to be a coincidence," Dr. O'Brien authored a report for the PCRA court expressing an opinion to a reasonable degree of medical certainty that Appellant was neither competent then (i.e., during his first PCRA petition and appeal) nor during his trial to proceed legally. *See* Report of John O'Brien, M.D., dated 7/26/06. Figuring prominently in Dr. O'Brien's opinion was Appellant's "ongoing refusal to permit legal representation in the context of legal proceedings with significant potential impact on his current legal status and his future[,]" which Dr. O'Brien saw as further evidence of a later development of paranoid symptomatology noted by earlier evaluators. *Id.*

As noted above, however, the PCRA court considered Dr. O'Brien's opinion—reached, as it was, without the benefit of a personal interview—unavailing in light of two recent, interview-based, court-ordered mental evaluations in which Dr. James Jones, M.D. in 2001 and a court psychologist Jules DeCruz in 2006, respectively, had found Appellant competent. *Commonwealth v. Marshall,* 596 Pa. 587, 599–601, 947 A.2d 714, 721–23 (2008). It did not escape the court's attention,

6. Trial counsel did not request a competency hearing at that time, however, and the court did not hold one.

either, that Dr. O'Brien's report specifically echoed the Defender's recurring argument that Appellant's very decision to proceed *pro se* could reflect a mental illness. Unwilling to abide what it deemed further unnecessary delay under the circumstances, the court denied the Federal Defender's request for a separate competency hearing in favor of proceeding straight to a *Grazier* hearing to address Appellant's competency to self-represent.[7]

Appellant's testimony at the April 27, 2007 *Grazier* hearing impressed the PCRA court that he was both acutely aware of the substantive issues at bar and quite capable of intelligently expressing his preference to proceed *pro se* with his first PCRA appeal. After Appellant confirmed on direct examination that he understood both his rights to, and the generally accepted advantages of, having counsel navigate the complexities of a capital case, N.T. 4/27/07 at 12–14, the following exchange took place demonstrating Appellant's appreciation of what was at stake:

**[THE COMMONWEALTH]:** [Having just verified Appellant "had a problem" with present counsel] Okay. Would you like to be represented by a different counsel?

**[APPELLANT]:** No. No. I prefer to go *pro se.*

**Q:** Would you like to be represented by different counsel to help you in writing your briefs, and make sure that they conform to all the rules that the Supreme Court has for writing these kinds of briefs?

**A:** Let me make sure I understand this question. Are you asking me do I wish to have standby-counsel?

**Q:** Yes; different from current counsel.... I'm asking you if you want to have standby-counsel assist you? Not Mr. Nolan or Ms. Elleman, but a different lawyer that the Court would appoint for you to assist you in your brief writing and in your preparations for your Supreme Court appeal?

**A:** I mean, I feel this way. I want to represent myself, but, in the same vein, if Mr. Nolan and Ms. Elleman could

---

7. We note with displeasure the attempt in capital cases to cause delay through strategic diversion. *See Commonwealth v. Spotz*, 610 Pa. 17, 191–92, 18 A.3d 244, 348–49 (2011) (Castille, C.J. concurring).

be appointed as standby-counsel, I may see to that, you know, but I just wish to be the attorney of record representing myself.

**Q:** Well, the problem is, this is for you to determine, sir, but if you feel that you have differences with your current counsel that cannot be resolved, and there is a risk that those differences will remain, even if they are standby-counsel, then you need to think about whether you want current counsel to remain as standby-counsel or if you want different counsel?

**A:** Again, if they could remain as standby-counsel, I will accept that, but I definitely, irrevocably, don't wish to have counsel—in other words, I want to go *pro se*. I want to remain *pro se*. That position with me is irrevocable at this time. I wish to stay *pro se*.

N.T. at 18–19.

Both the court and the Commonwealth then discussed with Appellant how he may perceive the advisory role traditionally performed by stand-by counsel as but a continuation of the strategic conflict between himself and counsel that led him to seek their withdrawal. Before deciding to proceed *pro se* without stand-by counsel, Appellant suggested he could work with one of the two counsel from the Federal Defender's:

**[APPELLANT]:** Yes. I would consider Ms. Elleman but, you know, again, we left—because I know that expertise, Your Honor, is something to be desired. You know, I can't deny that, but I do not want certain issues [mental health issues] raised. We had discussed what they were, and if we can agree on that, then I'm pretty sure that we could work, you know, together.

N.T. at 24–25.

Appellant then covered his agenda, first clarifying that he wished to forego the Federal Defender-authored Rule 1925(b) statement filed with this Court in favor of proceeding on his own, with the exception that he would adopt three Federal Defender-raised issues dealing with matters other than his alleged mental incompetency:

[APPELLANT]: If I may, I have four items I would like to request into the record?

[THE COURT]: Go ahead.

[APPELLANT]: Your Honor, I have filed a timely pro se stating the matters 1925B. And the issues that I've raised in the Statement of Matters, it coincides with the questions for review named in my notice that was filed by notice of the appeal to the Supreme Court.

I'd like to—I would—and it appears that Mr. Nolan has filed a 1925B Statement of Matters which I don't want to adopt that, and I want to proceed with my timely filed 1925B Statement of Matters.

[THE COURT]: So now that you are *pro se*, you wish to withdraw Mr. Nolan's 1925B statements?

[APPELLANT]: Yes.

[THE COURT]: Okay.

[APPELLANT]: [After the court makes certain it understands Appellant's request] And again, as to—though Mr. Nolan amended to the PCRA petition, again, I'm sorry if I sound redundant, but I wish to not pursue the mental health issues, but the other three, besides that, I will adopt those.

N.T. at 26–28.

Appellant would thereafter engage the court in a detailed request, supported by trial counsel affidavits Appellant had secured prior to the hearing, that the court redact from the trial court record its declaration that Appellant exhibited violent behavior toward defense counsel. N.T. at 29–33. The PCRA court denied the request over Appellant's argument that such a judicial observation could cast him in an unfavorable light with the appellate court. N.T. at 32. Finally, at the conclusion of the hearing, Appellant asked to receive a copy of the *Grazier* hearing notes of testimony, which the court granted. N.T. at 34–35.

Although the issue of incompetency was not raised specifically in the first PCRA appeal, we observed in recounting Appellant's *Grazier* hearing that the PCRA court had deemed him competent to prepare his appeal:

> In particular, the PCRA court noted that: (1) it "undertook a prolonged process in determining [appellant]'s competency"; (2) the mental health evaluation revealed no psychological disorders that would prevent appellant from competently litigating his appeal; (3) during the *Grazier* hearing, appellant "exhibited an understanding and appreciation for the gravity of his decision to proceed without counsel"; and (4) at each opportunity the court had to observe appellant, including at several hearings, the court found appellant to "exhibit[ ] a more than usual understanding of the law and its procedures." PCRA Ct. Op., 7/25/07, at 3, 6.

*Ali*, at 85 n. 3, 10 A.3d at 291 n. 3. In that vein, we further noted our September 27, 2007 denial of a motion subsequently filed by the Commonwealth requesting a remand, another competency hearing, and appointment of counsel. *Id.*

Here, in Appellant's second PCRA petition, the Federal Defender's time-bar exception proffer of first PCRA incompetency evidence fails to overcome the above demonstration of Appellant's ability to understand, both factually and rationally, the nature of proceedings while raising, preserving, and litigating issues his first PCRA petition and appeal. The Federal Defender places heavy reliance on Dr. O'Brien's 2006 medical opinion that Appellant was incompetent at relevant times, but this opinion was extrapolated exclusively from past records and a brief personal interview conducted fifteen years earlier, contradicted by two recent, interview-based medical reports, and already judicially considered unpersuasive in Appellant's first PCRA petition and appeal. Nor does Dr. O'Brien's opinion negate the fact that Appellant showed temporal awareness in filing, *pro se*, a timely first PCRA petition and subsequent amendments after his judgment of sentence became final, an ability to articulate ably to the PCRA court in his *Grazier* hearing a considered decision to forego counsel in favor of self-representing, and the capacity to brief twelve appellate issues to this Court sufficiently to earn merits review on each one. That Appellant was, throughout first PCRA proceedings, plainly able to ascertain the factual predicates to the twelve issues he pressed in his petition and appeal but

somehow unable to ascertain facts necessary to the additional *Brady* and ineffective assistance of counsel issues only now raised on his behalf for the first time is simply incongruous. The untenable nature of the Federal Defender's argument, therefore, compels the conclusion that the PCRA court properly rejected the incompetency-based "newly-discovered" evidence claim before it.

Nor does error attend the denial of the Federal Defender's separately enumerated *Brady* and ineffective assistance of counsel claims as untimely, as their respective qualifications for a Section 9545 time-bar exception depended entirely on the discredited assertion that Appellant's incompetence prevented him from ascertaining the facts necessary to such claims. Indeed, the Federal Defender offers no other explanation of why, with the exercise of due diligence, such alleged facts could not have been knowable during the period in which to raise and develop claims with the first PCRA court.[8]

The PCRA court's order identifying Appellant's second PCRA petition as untimely is supported by the record and, thus, without legal error. Accordingly, we affirm the order below on time-bar grounds.

Affirmed.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER and McCAFFERY join the opinion.

Justice TODD concurs in the result.

---

8. The one exception is the newly-discovered evidence claim based on a 2005 lecture given by a former Assistant District Attorney addressing allegations of racial discrimination in jury selection in the Philadelphia District Attorney's Office. We have, however, previously addressed this very claim in another case and excluded it from the timeliness exception, reasoning that the 2005 lecture did not constitute a newly discovered *fact* but was instead "a newly discovered or newly willing *source* for previously known facts." *Commonwealth v. Marshall*, 596 Pa. 587, 599, 947 A.2d 714, 721 (2008).