J-A22041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRENCE JOHNSON | : | |
| | : | |
| Appellant | : | No. 385 WDA 2021 |

Appeal from the PCRA Order Entered February 24, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0011193-2007

BEFORE: OLSON, J., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: JANUARY 03, 2023**

Terrence Johnson, *pro se*, appeals from the order dismissing, as untimely, his second petition filed pursuant to the Post Conviction Relief Act. **See** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

Adopting the summary of the case, as written by the lower court:

> On May 10, 2007, India Worlds … accused Johnson of raping her. In the days following Worlds's rape allegation, tensions increased between friends and relatives of Johnson and Worlds. At some point, Lamar George, a friend of Worlds's mother, confronted Johnson over the rape allegation. Animosity quickly began to grow between the two men. At approximately 2:40 a.m. on May 16, 2007, Johnson was searching for George to confront him about the rape allegation. Johnson went to George's apartment complex with two of his friends and, when the men arrived, they attempted to convince George to come outside. However, when George saw that Johnson and his friends were carrying firearms, he refused to exit his apartment. In an effort to get George out of his residence, Johnson went to the residence of

---

[*] Retired Senior Judge assigned to the Superior Court.

James Windsor, who was a close friend of both Worlds and George. Johnson persuaded Windsor to leave his residence and go to George's residence and ask him to come outside, assuring him that it was safe to do so. When George refused to exit the residence, Johnson shot Windsor in the back of his head, killing him instantly.

Johnson was ultimately found guilty of first[-]degree murder, firearms not to be carried without a license, and person not to possess firearms. On June 11, 2009, [Johnson] appeared before [the lower court] for sentencing and received a sentence of life imprisonment in relation to his first[-]degree murder conviction. [The lower court] imposed a term of incarceration of not less than three and one half … and not more than seven years as a result of his conviction for carrying a firearm without a license. Johnson received no further penalty in relation to the remaining count.

Trial Court Opinion, at 1-2 (undated and unpaginated) (footnotes omitted).

After sentencing, Johnson filed post-sentence motions that were denied. Then, he filed a notice of appeal to this Court, which resulted in an affirmance of his judgment of sentence. Following our disposition, Johnson filed a petition for allowance of appeal with our Supreme Court, which was correspondingly denied on August 15, 2012. No further review was sought.

Approximately ten months later, Johnson filed his first PCRA petition. After the appointment of counsel and an evidentiary hearing, Johnson's petition was dismissed. We affirmed Johnson's appeal from this determination, and our Supreme Court denied his petition for allowance of appeal from our decision.

On July 24, 2019, Johnson filed the present PCRA petition. Attached to that petition was a one-page letter, marked as Exhibit A, from the

Pennsylvania Innocence Project, dated June 4, 2019, which served to "update [Johnson] on the status of [the Innocence Project's] investigation into [his] case." PCRA Petition, dated 7/24/19, Ex. A. Of note, the letter identified two individuals, Raneisha Hall and Lauren Thomas, as having indicated that "they witnessed someone else commit the murder." *Id*. Eventually, and in an apparent attempt to supplement his petition, Johnson filed a signed statement from Raneisha Hall reinforcing, in part, what was stated in the Innocence Project letter: that Hall saw another shoot Windsor. *See* Petitioner's Affidavits in Support of Objections to the PCRA Court[']s Notice of Intent to Dismiss Pursuant to Pa.R.Crim.P. 907, dated 10/15/20 (the exclusive, yet unenumerated, affidavit attached to this filing).

The lower court determined that Johnson's second PCRA petition was time barred and without exception, which resulted in its dismissal. Johnson timely appealed from this determination, and the relevant parties have complied with their obligations under Pennsylvania Rule of Appellate Procedure 1925. As such, this matter is ripe for review.

On appeal, Johnson asks:

1. Did the lower court err and abuse its discretion by dismissing his second PCRA petition without appointing counsel and providing an evidentiary hearing, as he timely presented newly discovered evidence from the Pennsylvania Innocence Project that serves to demonstrate his innocence?

*See* Appellant's Brief, at 10.

"Our standard of review of a PCRA court's dismissal of a PCRA petition

- 3 -

is limited to examining whether the PCRA court's determination is supported by the evidence of record and free of legal error." ***Commonwealth v. Wilson***, 824 A.2d 331, 333 (Pa. Super. 2003) (citation omitted). Before delving into the thrust of Johnson's argument, however, we must first ascertain whether we have jurisdiction to consider his underlying petition. ***See Commonwealth v. Fahy***, 737 A.2d 214, 223 (Pa. 1999). Normally, to be considered timely, a PCRA petition must be filed within one year of the date the judgment becomes final. ***See Commonwealth v. Copenhefer***, 941 A.2d 646, 648 (Pa. 2007); ***see also*** 42 Pa.C.S.A. § 9545(b)(3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."). An untimely PCRA petition renders the court without jurisdiction to consider its merits. ***See Commonwealth v. Ali***, 86 A.3d 173, 177 (Pa. 2014).

To circumvent the PCRA's time bar, a petitioner can avail himself of one of the PCRA's three statutorily enumerated exceptions. ***See Commonwealth v. Smallwood***, 155 A.3d 1054, 1059-60 (Pa. Super. 2017). Of exclusive relevance to the present case is exception number two, which requires the petition to allege and the petitioner to prove that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S.A. § 9545(b)(1)(ii). If the claim arose on December 24, 2017, or thereafter, the petitioner has one

year from the date the claim could have been presented to file the petition. *See id*., at § 9545(b)(2) (amended in 2018) (establishing by implication that any claim arising prior to December 24, 2017, is subject to the old "within sixty days of the date the claim could have been presented" rule).

As Johnson, on direct appeal, did not file a petition for a writ of certiorari with the United States Supreme Court, his judgment of sentence became final ninety days after our Supreme Court denied his petition for allowance of appeal. *See* U.S.Sup.Ct. Rule 13(1) (allowing for a filing window of ninety days after the entry of an order denying discretionary review). Therefore, Johnson's judgment of sentence became final in November 2012, and, pursuant to the PCRA's Section 9545(b)(1), he had until November 2013 to file a timely PCRA petition. With these precepts in mind, Johnson's 2019 petition is facially untimely.

Johnson asserts that he first learned of four witnesses who could provide "exculpatory and impeachment evidence" helpful to his case on June 4, 2019, when he "received a correspondence from John Robert Butler[,] Staff Investigator for the Pennsylvania Innocence Project[.]" Appellant's Brief, at 14.[1] In that letter, Butler "informed [Johnson] that on April 25, 2019, [Butler]

_____

[1] We note that, despite attaching four affidavits to his brief before this Court, it appears that only one of those affidavits, authored by Raneisha Hall, is part of the record that was before the lower court. Moreover, Johnson's concise statement of matters complained of on appeal solely discusses Hall's affidavit, to the exclusion of the three other apparent witnesses.

interviewed Courtney Jeter, Asia Allen, Raneisha Hall, and Lauren Thomas."
*Id*.

As outlined, *supra*, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that: (1) there is a "fact" that was unknown to him; and (2) that the same fact could not have been determined through the exercise of due diligence. We emphasize that "[t]he focus of the exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." **Commonwealth v. Marshall**, 947 A.2d 714, 720 (Pa. 2008) (citation and brackets omitted). Moreover, "[d]ue diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner *must explain why* he could not have learned of the new fact(s) earlier with the exercise of due diligence." **Commonwealth v. Williams**, 35 A.3d 44, 53 (Pa. Super. 2011) (emphasis added) (citations omitted).

Assuming, *arguendo*, that the contents of Hall's affidavit establish, in its entirety, a new fact that was previously unknown to him, Johnson makes no attempt to provide any background information serving to demonstrate what led to its discovery. Other than baldly suggesting that "all the witnesses admitted to intentionally withholding [allegedly exculpatory information] from everyone[,] including law enforcement, prior to their April 25, 2019[] interview with … Butler because they were fearful[,]" Appellant's Brief, at 15, Johnson has not identified how or why these meetings between the

Pennsylvania Innocence Project and four witnesses came to fruition. It strains credulity to assume that the Innocence Project would have some sort of innate knowledge of witnesses that could possibly be relevant to Johnson's case without Johnson knowing the same (or Johnson, himself, being the genesis of that information). In fact, the Innocence Project's letter, by its very wording, appears to show some sort of existing relationship between Johnson and that organization. *See* Appellant's Brief, Appendix 3, Pennsylvania Innocence Project letter dated June 4, 2019 (unpaginated) (identifying that its author "wanted to write to [Johnson] to *update* [him] on the status of [the Innocence Project's] investigation into [his] case[]") (emphasis added). However, Johnson has not even provided a scintilla of information relevant to anything that transpired prior to the Innocence Project's interviews. Instead, Johnson assumes that the letter's language, facially, is sufficient to demonstrate that he engaged in due diligence.

In Hall's affidavit, which is dated October 2, 2019 (almost six months after the interviews described in the Innocence Project's letter), she specifically mentions that she knew Johnson and "spoke with him occasionally on the phone after he was convicted." Appellant's Brief, Appendix 8, Certification of Raneisha Hall (unpaginated). Hall also indicates that she has "now decided to tell the truth about what [she] witnessed because [she] moved away from [the area after Windsor was murdered.]" *Id*. Juxtaposed against the precise language of the Innocence Project's letter, though, Hall's

decision to provide this information had already been made by April, or possibly earlier, of that same year. ***See*** Appellant's Brief, Appendix 3, Pennsylvania Innocence Project letter dated June 4, 2019 (unpaginated) (writing that the Innocence Project spoke to Hall on April 25, 2019, but no indication as to what had been discussed or known prior to that date).

Simply put, Johnson has not, with any degree of certainty, demonstrated what happened or what was known prior to the Innocence Project's interviews. Despite it being his burden to plead and prove, without any clear timeline of events, we cannot tell when he gleaned some notion that Hall's statement could provide him with information possibly beneficial to him in a collateral appeal. Such information *could* have been garnered months, if not years, prior, and without any clarity on the issue, we are left with pure speculation in pinpointing a precise date. With this ambiguity inherent in the record, we agree with the lower court's determination that Johnson has not demonstrated due diligence. Accordingly, having failed to plead and prove an exception to the PCRA's time bar, we without jurisdiction to consider his underlying claim. Correspondingly, we affirm the order dismissing his second PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  01/03/2023