J-S04044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID EMPSON | : | |
| | : | |
| Appellant | : | No. 1825 EDA 2024 |

Appeal from the PCRA Order Entered June 25, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010509-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID EMPSON | : | |
| | : | |
| Appellant | : | No. 1826 EDA 2024 |

Appeal from the PCRA Order Entered June 25, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010518-2015

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 5, 2025**

Appellant, David Empson, appeals, *pro se*, from the order dismissing his untimely third petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et seq.*  A jury previously found him guilty, between two separate dockets, of three counts each of robbery and terroristic

---

 * Retired Senior Judge assigned to the Superior Court.

threats, and two counts of conspiracy to commit robbery.[1]  Appellant asserts that the PCRA court erred by dismissing his petition for lack of jurisdiction where he argued for the application of a PCRA time-bar exception based on his alleged mental inability to raise a timely challenge to his direct appeal counsel's effectiveness.  Upon review, we affirm.

On direct review, we adopted the following summary of the facts of the case, as originally set forth by the trial court:

> On September 4, 2015, at about 3:15 p.m., a male entered a Rite Aid Drug Store located at 4616 N. Broad Street, in Philadelphia, wearing a stocking over his head and Muslim garb, and approached the checkout counter.  Ms. Cahcheral Stinson, an assistant manager at the store noticed the male and thought that something was amiss.  Ms. Stinson immediately telephoned the store's loss prevention manager, who advised Ms. Stinson to call 911.  She did so immediately but was ordered by the male to get off the phone.
>
> As this was occurring, when the male reached the counter, he handed a cashier named Rosa [Lo] a note that threatened to blow the brains out of the recipient of the note unless she gave the male all of the money and cigarettes.  [Ms. Lo] handed the note to Ms. Stinson, who[,] upon reading the note, put over $300.00 and several packs of Newport cigarettes in a bag that she surrendered to the male, who immediately fled the store and got into [] the passenger side of a silver sedan with a Pennsylvania license plate that had the numbers and lettering scratched off of it.
>
> After the male fled, the police interviewed Ms. Stinson.  During the interview, she described the robber as being between 45-55 years of age, tall, dark complected, [] skinny[,] having a lazy left

---

[1]  18  Pa.C.S.  §§  3701(a)(1)(i),  2706(a)(1),  and  903/3701(a)(1)(i), respectively.

eye, a red beard, a silver bracelet on his right wrist[,] and missing teeth.

On September 6, 2015, Ms. Alysia Carter was an assistant manager at a Rite Aid Drug Store located at 1334 Windrim Avenue in Philadelphia, when shortly after 8:00 a.m., a bald man with reddish eyes and wearing Muslim garb, who had a scarf partially covering his face, entered the store. At the time[,] Ms. Carter was preparing to open the store[,] and the entry of the male into the store made her concerned. The male ordered Ms. Carter to approach him and with his hand behind his back, he said, "Give me what I want; I'm not trying to hurry nobody, just give me what I want." That made her very nervous because she believed that the male was hiding a weapon.

Ms. Carter walked to the middle cash register at the check-out counter and took out $88.00 from it. She then gave the money to the male, along with numerous packs of Newport cigarettes, [and] he put it all in a Rite Aid bag. The male then ran out of the store and jumped into a tannish colored Buick that sped from the scene. Ms. Carter followed him outside and could only make [out] a letter "J" on the license plate before the car went out of her sight. She also identified the car she had seen from a photograph shown [to] her by the prosecutor [at trial].

On September 7, 2015, Mr. Alex Cherubin, a Rite Aid loss prevention employee at the Windrim Avenue Rite Aid, watched a video recording of the robbery that occurred the previous day and also spoke to Ms. Carter. He took particular interest in the physical characteristics of the robber and the car he fled in after the robbery.

Later that day, Mr. Cherubin was in the parking lot of the Rite Aid speaking to another employee when the vehicle the robber fled in the previous day pulled into the parking lot. Mr. Cherubin saw that a woman was driving and saw [Appellant], who was wearing a robe of some sort, get out of the car, go to the trunk, which had opened, retrieve a bandana from it, and commence[d] to wrap it around his face. Mr. Cherubin[] immediately called the police because he believed that another robbery was about to occur. As he was speaking to a police dispatcher and telling them that he believed that the store was about to be robbed again, [Appellant] got into the car and the driver quickly backed up and then sped

from the parking lot. Before the car did so[,] Mr. Cherubin memorized the license plate number.

Police arrived approximately five minutes later and asked Mr. Cherubin to go with them to another location. He agreed and upon arrival at the location he identified the car and [Appellant] as being the car and the person he just had seen in the parking lot. When he identified [Appellant], [Appellant] was no longer wearing the robe he had on when in the parking lot.

Philadelphia Police Detective Britton Brown, who had been a police officer when the robberies occurred, was on routine patrol on September 7, 2015, with his partner, when they received a radio call announcing that there was a robbery in progress at the Windrim Avenue Rite Aid. The radio call described a vehicle and gave its license plate number. Upon getting the license plate number, Detective Brown did a computer search of the number and ascertained that it was registered to Karima Choice, [Appellant's] wife, who lived in the 4400 block of Cleveland Street. He and his partner immediately drove to that location and saw the car, a gold 2000 Buick, and [Appellant], who was bald, had a red beard, and was wearing a blue shirt, standing next to the car. In the detective's opinion, [Appellant] matched the description of the male described in the radio call.

When the officers arrived on the block, [Appellant] abruptly crouched down and then walked to a nearby vacant lot. The officers stopped [Appellant] for investigation and radioed that they had done so. Soon thereafter, Mr. Cherubin arrived and identified [Appellant]. [Appellant] was placed under arrest and transported to [the] 35th District police station.

Following his arrest, [Appellant] waived his rights under **Miranda** [**v. Arizona**, 384 U.S. 436 (1966),] and gave police a statement. In that statement[, Appellant] admitted that he was the person who robbed the Rite Aid stores on September 4 and 6, 2015, and who had gone to the Rite Aid on Windrim Avenue on September 7, 2015. During the interview[, Appellant] identified the note given to Ms. Stinson by the male as the one he handed to the cashier during the September 4, 2015[] robbery.

Philadelphia Police Detective Justin Falcone was assigned along with other detectives to investigate the three incidents outlined above. In the course of doing so, search warrants were obtained

for Ms. Choice's residence and for the Buick Regal. [A police] search of the car yielded a black burqa[-]style face mask. From the house, police seized three packs of Newport cigarettes, two firearm magazines, ammunition, proof of residence for [Appellant] and Karima Choice, and a black, Muslim[-]type garment, which was found in a bedroom in the residence.

Police detectives also obtained surveillance videos from the two Rite Aid stores. They recorded all three incidents as well as the perpetrators and videos of the vehicle used during the incidents. The vehicles used in each of the incidents [] in the videos appeared to be similar.

*Commonwealth v. Empson*, 2019 WL 666718, *1 & attached Trial Court Opinion, 10/16/17, 2-6 (Pa. Super., filed Feb. 19, 2019) (unpublished memorandum) (2532 & 2594 EDA 2017) (record citations and footnotes omitted).

On April 28, 2017, the Honorable Kai N. Scott presided over a hearing on Appellant's four corners motion to suppress the evidence recovered from the Cleveland Street home and the Buick sedan. *See* N.T., 4/28/17, 20-34; Order (Suppression Motion), 4/28/17, 1. Judge Scott denied the suppression motion and granted a recusal motion.[2] *See* N.T., 4/28/17, 71-73; Order

_____

[2] Judge Scott informed Appellant at the start of the suppression hearing that she had formerly represented a woman in a criminal matter with the name of Appellant's wife. *See* N.T., 4/28/17, 18-19. Appellant showed the judge a photograph of his wife, and the judge said that she did not think the person in the photograph was her former client. *Id.* at 19-20. At that time, Appellant's counsel noted his appreciation of the disclosure and declined to raise a recusal request. *Id.* After the presentation of evidence in support of a separate motion to suppress Appellant's statement to the police, Appellant's counsel made a request for Judge Scott's recusal, and the court granted that request after remarking that some of the information revealed in the hearing
*(Footnote Continued Next Page)*

(Recusal Motion), 4/28/17, 1. The court also deferred to a later date consideration of a motion in *limine* concerning the mask recovered from the Buick sedan and a motion to suppress Appellant's statement to the police. ***See*** N.T., 4/28/17, 34, 72-73.

The case was subsequently reassigned to the Honorable Jeffrey P. Minehart, who presided over a hearing on Appellant's motion to suppress his statement to the police on April 28, 2017, and denied the motion on May 8, 2017. ***See*** Order, 5/8/17, 1 (Suppression Motion). After a trial on May 11-12, 2017, the jury before Judge Minehart found Appellant guilty of the above-referenced offenses.[3] On July 11, 2017, the trial court sentenced Appellant to an aggregate term of twenty-five to fifty years' imprisonment.[4] ***See*** N.T., 7/11/17, 14-16. On direct review, Appellant, with the assistance of newly-appointed counsel, challenged the denial of his motion to suppress his

_____

convinced her that she had an attorney-client relationship with Appellant's wife. ***Id.*** at 71-73.

[3] The jury found Appellant guilty of two counts each of robbery, terroristic threats, and criminal conspiracy, with respect to the crimes against Ms. Lo and Ms. Stinson on September 4, 2015. Verdict Report, CP-51-CR-0010518-2015, 5/12/17, 1. The jury found Appellant guilty of the remaining robbery and terroristic threats counts at CP-51-CR-001509-2015, which respect to the crimes against Ms. Carter on September 6, 2015. Verdict Report, CP-51-CR-0010509-2015, 5/12/17, 1.

[4] The robbery convictions subjected Appellant to a mandatory minimum "third-strike" sentence for a third or subsequent crime of violence. ***See*** 42 Pa.C.S. § 9714(a)(2). Appellant was previously convicted of two other robberies. ***See*** N.T., 7/11/17, 8-9.

statement to the police. **See Empson**, 2019 WL 666718 at *2. We affirmed the judgments of sentence on February 19, 2019. See **Commonwealth v. Empson**, 209 A.3d 1069 (Pa. Super. 2019) (table) (2532 & 2594 EDA 2017). On July 10, 2019, our Supreme Court denied Appellant's petition for allowance of appeal. **See Commonwealth v. Empson**, 216 A.3d 1014 (Pa. 2019) (table) (117 & 118 EAL 2019).

Appellant filed two prior *pro se* PCRA petitions on November 14, 2019, and June 15, 2021. He amended the first petition with the assistance of appointed counsel. The PCRA court dismissed those petitions on December 8, 2020, and February 24, 2023. Appellant did not file an appeal from the dismissal of the first petition and discontinued an appeal from the dismissal of the second petition. **See** Appellate Docket for **Commonwealth v. Empson**, No. 613 EDA 2023 (April 17, 2023 docket entry for filing of *praecipe* for discontinuance).

On April 25, 2023, Appellant filed, *pro se*, his third PCRA petition, which is the focus of the instant appeal. In the petition, Appellant claimed that direct appeal counsel provided ineffective assistance by not raising a claim that Judge Scott erred by not recusing herself prior to the consideration of his four corners suppression motion. **See** Third PCRA Petition, 4/25/23, 2-3. He noted that direct appeal counsel identified a related trial court error claim in his direct review concise statement filed pursuant to Pa.R.Crim.P. 1925(b), but later abandoned it. **Id.** at 3. Appellant asserted that his substantive claim was reviewable consistent with the newly discovered fact exception to the

PCRA's time-bar provision because prior mental incompetence supposedly rendered the claim "unknowable to him." *Id.* at 1, *citing Commonwealth v. Cruz*, 852 A.2d 287 (Pa. 2004). In support of his prior mental incompetence allegation, Appellant asserted that his medical history from August of 2018 to March of 2023 reflected that he had a blocked heart artery and a heart attack which left him with chronic heart disease, requiring the installation of a pacemaker and the "influence of multiple medications that ha[d] effects on his mental and physical abilities." Third PCRA Petition, 4/25/23, 1 (noting "coronary artery disease and myocardial infarction which left him with a resultant ischemic cardiomyopathy" and "[implantable cardioverter defibrlator] placement which was originally a primary prevention device").

On May 23, 2024, the PCRA court, with the Honorable Scott DiClaudio presiding, issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907 because Appellant failed to invoke an exception to the PCRA's timeliness provision for his untimely petition. *See* Rule 907 Notice, 5/23/24, 1. In particular, the court noted that Appellant "failed to satisfy the two-pronged test enunciated in *Cruz*" in order to demonstrate the applicability of the time-bar exception at 42 Pa.C.S. § 9545(b)(1)(ii):

> [F]irst, you failed to demonstrate that you sustained incompetence from 2018 to 2023. Specifically, although your petition presents evidence that you had coronary artery disease, you failed to demonstrate that the resulting cardiac procedure and medication rendered you mentally incompetent such that you could not have raised the [ineffectiveness] claim timely in 2019.

> To the contrary, you filed a timely first PCRA [p]etition in 2019. Additionally, you filed subsequent petitions in 2020 and 2021.

Rule 907 Notice, 5/23/24, 1. In the alternative, the court asserted that Appellant failed to demonstrate that he raised his time-bar exception claim with the diligence required by 42 Pa.C.S. § 9545(b)(2) where he failed to specify the date on which he supposedly regained his mental competence. *Id.* Appellant did not file a response to the Rule 907 notice. The PCRA court dismissed the petition on June 25, 2024. Order (PCRA Dismissal), 6/25/24, 1. Appellant has timely appealed the dismissal and voluntarily filed a concise statement of errors complained of on appeal.[5] *See* Rule 1925(b) Statement, 7/17/24, 1; Notices of Appeal, 7/2/24, 1.

Appellant presents the following question for our review:

> Did the PCRA court commit an error of law when it dismissed Appellant's PCRA petition, claiming he failed to plead and prove any exception to the PCRA's timeliness requirement, where he alleged he lacked the mental ability to discover [d]irect [a]ppeal [c]ounsel's ineffectiveness for failing to raise on [a]ppeal trial [j]udge err [*sic*] to immediately recused itself prior to hearing the motion to suppress the physical evidence[?]

_____

[5] Appellant did not comply with our Supreme Court's decision in *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), when he included the dockets numbers for both of his underlying criminal matters on his lone filed notice of appeal. In response to orders we issued in each of these appeals addressing the noncompliance with *Walker*, Appellant filed amended notices of appeal. *See* Amended Notice of Appeal (1825 EDA 2024), 9/9/24, 1; Amended Notice of Appeal (1826 EDA 2024), 9/17/24, 1. We later *sua sponte* consolidated these appeals. *See* Superior Court Order (Consolidation), 9/30/24, 1; Pa.R.A.P. 513.

Appellant's Brief, 2 (suggested answer and unnecessary numbering omitted).[6]

Appellant argues that the PCRA court erred by rejecting his asserted PCRA time-bar exception based on allegations of his prior mental incompetence. *See* Appellant's Brief, 4-7. He contends that he "presented clear evidence" that coronary heart disease and related medication caused him to suffer significant brain impairment and physical impairment. *Id.* at 6. As for the fact that the PCRA court relied on the existence of his prior PCRA petitions to disprove his alleged prior mental incompetence, he maintains that "incompetent assistance [*sic*] filed multiple PCRA petitions on [his] behalf, without his consent." *Id.* He also argues that he presented his petition with requisite diligence because he asserted that he regained competency in March of 2023. *Id.* Despite these assertions, we agree with the PCRA court's dismissal of his untimely petition.

"Our standard of review for an order denying PCRA relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error." *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super. 2011). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.*

Our threshold concern is the timeliness of Appellant's petition, and whether an exception to the PCRA's time-bar provision applied to it, because

---

[6] Appellant has filed identical briefs in each of the appeals before us. For the sake of clarity, we will only refer to them as a singular brief.

it is well settled that "if a PCRA petition is untimely, a trial court has no jurisdiction to entertain the petition." ***Commonwealth v. Hutchins***, 760 A.2d 50, 53 (Pa. Super. 2000).

All PCRA petitions, "including a second or subsequent petition, shall be filed within one year of the date the judgment [of sentence] becomes final" unless an exception to timeliness applies. 42 Pa.C.S. 9545(b)(1).

Here, Appellant was sentenced for all his underlying convictions on July 11, 2017. After we affirmed his judgments of sentence on direct review, our Supreme Court denied his petition for allowance of appeal on July 10, 2019. His judgments of sentence therefore became final on October 8, 2019, upon the expiration of Appellant's ninety-day deadline for filing a petition for writ of *certiorari* with the United States Supreme Court. ***See*** 42 Pa.C.S. § 9545(b)(3) (judgment of sentence becomes final at conclusion of direct review or expiration of time for seeking review); U.S.Sup.Ct.R. 13 (setting deadline for seeking *certiorari*). Appellant thus would have had until October 8, 2020, to file a timely PCRA petition. ***See*** 42 Pa.C.S. § 9545(b)(1). Appellant did not file his instant PCRA petition until April 25, 2023.

To obtain review of his untimely PCRA petition, Appellant was required to plead and prove the applicability of one of three statutory exceptions that are found at 42 Pa.C.S. § 9545(b)(1)(i)-(iii). Moreover, pursuant to 42 Pa.C.S. § 9545(b)(2), he needed to plead and prove that he filed the petition "within one year of the date the claim could have been presented." ***Id.***

- 11 -

Appellant invoked the time-bar exception at section 9545(b)(1)(ii), which applies where "the facts upon which the [substantive] claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." *Id.*

Appellant relied principally on our Supreme Court's decision in *Cruz* to support his assertion of the time-bar exception under Section 9545(b)(1)(ii). In that case, our Supreme Court held that, *when proven*, mental incompetence "*may* satisfy the requirements" of the newly discovered facts exception where a defendant defaulted claims by operation of that incompetence. *Cruz*, 852 A.2d at 288 (emphasis in original); *see also id.* at 293. In *Cruz*, the PCRA petitioner suffered brain damage from a self-inflicted gunshot wound. *Id.* at 288, 296. Therein, our Supreme Court set forth that a defendant seeking the application of the Section 9545(b)(1)(ii) time-bar exception in connection with a claim of incompetence bears the burden of proving that: "(1) he was and remained incompetent through the period during which his right to file a PCRA petition lapsed; and (2) that his current petition was timely filed within [the one-year deadline set forth in 42 Pa.C.S. § 9545(b)(2)] of his becoming sufficiently competent to ascertain the facts upon which his underlying claims are predicated."[7] *Cruz*, 852 A.2d at 288.

_____

[7] The original quotation from *Cruz* referenced the former 60-day deadline in section 9545(b)(2) which existed prior to amendments to that section which became effective on December 24, 2018. That amendment applies to any claims arising on or after December 24, 2017.

"Broad claims of mental illness do not satisfy a statutory exception to the PCRA time-bar." *Commonwealth v. Shaw*, 217 A.3d 265, 270 (Pa. Super. 2019). Similarly, we have noted that "Pennsylvania courts have continued to construe narrowly the limited holding in *Cruz*." *Shaw*, 217 A.3d at 271 (collecting cases rejecting newly discovered fact exception claims alleging mental incompetence), *citing Commonwealth v. Ali*, 86 A.3d 173 (Pa. 2014), *Commonwealth v. Monaco*, 996 A.2d 1076 (Pa. Super. 2010), *Commonwealth v. Liebensperger*, 904 A.2d 40 (Pa. Super. 2006), and *Commonwealth v. Pagan*, 864 A.2d 1231 (Pa. Super. 2004).

Here, the relevant time period for purposes of assessing whether Appellant was unable to timely raise an ineffective assistance of counsel claim due to alleged mental incompetence is the period during which he could have timely filed a PCRA petition: from July 10, 2019, when our Supreme Court denied his direct review petition for allowance of appeal, and October 8, 2020, when his deadline for filing a timely PCRA petition expired. Nothing in this record demonstrates that Appellant underwent a state of mental incompetence during the relevant time period that would excuse the delay in the filing of his current petition for collateral relief. He attached medical records to his petition concerning, *inter alia*, the implantation of a defibrillator in him, but the records do not substantiate his mental incompetence allegation and, at times, appear to contradict it.

An attached discharge summary report, dated August 22, 2018, during the period in which Appellant was on direct appeal, refers to an MRI of his

brain reflecting a "right [posterior cerebral artery] ischemic stroke" and headaches as existing conditions that were relevant to his mental acuity. Discharge Summary Report, 8/22/18, 4, attached to Third PCRA Petition, 4/25/23. That report referenced Appellant's admitting to having problems concentrating and focusing as well as "some issues with his vision," but even his self-reported conditions did not suggest a state of mental incompetence. *Id.* Moreover, his only medications at that time were noted to be Xarelto (blood clot prevention medication), aspirin, a beta blocker, and a high intensity statin (cholesterol medication). *Id.*

An attached discharge summary report, dated August 22, 2018, discussed Appellant undergoing a nuclear stress test. *See* Discharge Summary Report, 8/22/18, 5, attached to Third PCRA Petition, 4/25/23. The end result of the procedure was that Appellant was discharged "back to jail [] in a stable condition." *Id.* We observe that the report indicated that Appellant had been counseled on the importance of staying compliant with all his medications at that time, and the fact that he was able to be counseled on that matter suggests a state of mental competence. *Id.* Appellant's medications at that time were identified as Coreg (beta blocker), Lipitor (cholesterol medication), Lisinopril (blood pressure medication), Omeprazole (heartburn medication), and aspirin. *Id.* at 2.

An attached "operative report," dated May 24, 2019, referred to Appellant being able to offer informed consent concerning the installation of his defibrillator at that time. Operative Report, 5/24/19, 1, attached to Third

PCRA Petition, 4/25/23. The same report also indicated that Appellant "tolerated the [installation] procedure well with no complications" and described the procedure as "successful." *Id.* at 2. That report described Appellant as being "aware and agreeable to discharge." *Id.* at 1-2.

Appellant did not specifically point to any particular passages in the attached medical records to substantiate his claim of mental incompetence. Our review of the medical records attached to his instant petition fails to show any proof that Appellant was suffering from mental incompetence, let alone incompetence in the relevant time period during which he could have timely raised a claim of ineffective assistance of counsel. The record supports the PCRA court's finding that, while Appellant "had coronary artery disease, he failed to demonstrate that the resulting cardiac procedure and medication rendered him mentally incompetent such that he could not have raised [his ineffectiveness] claim in 2019." PCRA Court Opinion, 6/25/24, 2. **See Ali**, **supra**, 86 A.3d at 177-81 (holding Ali did not meet newly discovered fact exception because he failed to prove he was mentally incompetent during statutory period); **Monaco**, **supra**, 996 A.2d at 1083 (holding Monaco did not satisfy newly discovered fact exception where, *inter alia*, he did not allege post-traumatic stress disorder (PTSD) impaired his ability to raise his substantive claim in timely manner, and thus his PTSD diagnosis did not fall within narrow **Cruz** holding).

Additionally, we agree with the PCRA court's observation in its Rule 907 notice that Appellant's filing of a timely *pro se* PCRA petition in 2019 lends

record support suggesting that Appellant was competent to raise his desired ineffective assistance of counsel claim in a timely manner. Appellant did not make any proffers below to support his present bald assertion that his former PCRA petitions were filed "without his consent." Appellant's Brief, 6. Appellant's timely *pro se* 2019 petition belies his claim of mental incompetence. **See Ali**, **supra**, 86 A.3d at 181 (noting that Ali showed temporal awareness in filing his timely first PCRA petition and remarking that Ali's assertion that he was able to ascertain factual predicates to claims raised in first PCRA petition but unable to do so for issues raised in second PCRA petition was "simply incongruous").

For the foregoing reasons, we conclude that the PCRA court correctly determined that it lacked jurisdiction to consider the merits of Appellant's untimely third PCRA petition. We therefore affirm its order denying post-conviction relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/5/2025

- 16 -